Anthony W. Austin, Esq.
Nevada Bar No. 10850
Kendall M. Lovell, Esq.
Nevada Bar No. 15590
**FENNEMORE CRAIG, P.C.**
9275 W. Russell Rd., Suite 240
Las Vegas, Nevada 89148
Telephone: (702) 692-8000
Facsimile: (702) 692-8099
Email: aaustin@fennemorelaw.com
         klovell@fennemorelaw.com

K. Elizabeth Sieg (*pro hac vice* forthcoming)
Virginia Bar No. 23141
Benjamin J. Sitter (*pro hac vice* forthcoming)
Pennsylvania Bar No. 317382
**MCGUIREWOODS LLP**
800 East Canal Street
Richmond, Virginia 23219
Telephone: 804.775.1000
Email: bsieg@mcguirewoods.com
         bsitter@mcguirewoods.com

*Attorneys for Navient Solutions, LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTINA FENNELL, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>NAVIENT SOLUTIONS, LLC,<br><br>          Defendant. | Case No. 2:22-cv-01013-CDS-NJK<br><br>**DEFENDANT NAVIENT SOLUTIONS, LLC'S MOTION TO COMPEL ARBITRATION** |

/ / /

/ / /

/ / /

/ / /

1    Defendant Navient Solutions, Inc. ("Navient"), by and through its counsel of record, hereby

2  moves this Court for an order compelling arbitration of Plaintiff's claims pursuant to her Creative

3  Education Loan Promissory Notes ("Agreements"), which exist between Plaintiff and Navient.[1]

4    The Motion is made pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*,

5  and on the grounds that she executed Agreements containing mandatory arbitration provisions, and

6  that the claims asserted on her behalf fall within the scope of that arbitration provision.

7    The Motion is based on this Notice, the accompanying Memorandum of Points and

8  Authorities, concurrently filed herewith, the Declaration of Stephanie Box and exhibits thereto, all

9  the records and documents on file in this matter, and any oral or documentary evidence presented at

10  the hearing of this Motion.

11  DATED: August 18, 2022              Respectfully submitted,

12                                                     */s/ Kendall M. Lovell*
                                                        Anthony W. Austin, Esq.
13                                                     Nevada Bar No. 10850
                                                        Kendall M. Lovell, Esq.
14                                                     Nevada Bar No. 15590
                                                        **FENNEMORE CRAIG, P.C.**
15                                                     9275 W. Russell Rd., Suite 240
                                                        Las Vegas, Nevada 89148
16                                                     Telephone: (702) 692-8000
                                                        Facsimile: (702) 692-8099
17                                                     Email: aaustin@fennemorelaw.com
                                                        Email: klovell@fennemorelaw.com
18

19
                                                        K. Elizabeth Sieg (*pro hac vice* forthcoming)
20                                                     Benjamin J. Sitter (*pro hac vice* forthcoming)
                                                        **MᴄGᴜɪʀᴇWᴏᴏᴅꜱ LLP**
21                                                     800 East Canal Street
                                                        Richmond, Virginia 23219
22                                                     Telephone: 804.775.1000
                                                        Email: bsieg@mcguirewoods.com
23                                                     Email: bsitter@mcguirewoods.com
24
                                                        *Attorneys for Navient Solutions, LLC*
25

26
     _____
27  [1]   Defendant's acknowledge the deadline set forth by the Stipulation and Order to Extend Defendant's Time to File
     Response Pleading (ECF 17) was August 17, 2022.  However, due to technical difficulties, Plaintiff's counsel agreed
28  to an additional one-day extension. *See* the E-mails Between the Parties' Counsel, a true and accurate copy of which
     is attached hereto as **Exhibit A**. Accordingly, Defendant's Motion to Compel Arbitration is timely.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.    INTRODUCTION ..................................................................................................................1

II.   BACKGROUND ...................................................................................................................1

III.  ARGUMENT .........................................................................................................................3

    a.   Legal Standard ...........................................................................................................3

    b.   Federal and Colorado Law Apply to the Contract. ....................................................5

    c.   The Federal Arbitration Act Governs the Arbitration of Plaintiff's Claims. ............5

    d.   Plaintiff is Required to Arbitrate these Claims Against Navient. ..............................8

        i.   Valid Arbitration Agreements Exist and Delegate Arbitrability
            Determinations to the Arbitrator. ........................................................................9

        ii.  Plaintiff's Claims Fall within the Scope of the Arbitration
            Provisions. ......................................................................................................... 11

            1.   The Factual Predicate underlying All of Plaintiff's Claims
                Fall within the Arbitration Provisions............................................... 11

            2.   Each of the Remedies Sought by Plaintiff Fall within the
                Arbitration Provisions ....................................................................... 12

            3.   Each of Plaintiff's Causes of Action Fall within the
                Arbitration Provisions ....................................................................... 13

    e.   The Court Should Dismiss this Action Pending Arbitration................................... 16

IV.   CONCLUSION ....................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson,*
    513 U.S. 265 (1995) ................................................................................................ 6, 7

*American Express Co. v. Italian Colors Restaurant,*
    570 U.S. 228 (2013) ..................................................................................................... 3

*In re Anderson,*
    884 F.3d 382 (2d Cir. 2018) ....................................................................................... 13

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333 (2011) ..................................................................................................... 3

*AT&T Techs., Inc. v. Commc'n Workers of Am.,*
    475 U.S. 643 (1986) ................................................................................................ 6, 8

*Bahrampour v. Lampert,*
    356 F.3d 969 (9th Cir. 2004) ..................................................................................... 14

*Balan v. Tesla, Inc.,*
    840 F. App'x 303 (9th Cir. 2021) ............................................................................... 11

*Beard v. Santander Consumer USA, Inc.,*
    No. 1:11-cv-11-1815, 2012 WL 1292576 (E.D. Cal. April 13, 2021) .............................. 5, 10

*Benson Pump Co. v. South Cent. Pool Supply, Inc.,*
    325 F. Supp. 2d 1152 (D. Nev. 2004) ......................................................................... 9

*BFN-Greeley, LLC v. Adair Grp., Inc.,*
    141 P.3d 937 (Colo. App. 2006) ................................................................................. 5

*BTG180, LLC v. Fun Club USA, Inc.,*
    No. 2:14-CV-188 JCM NJK, 2014 WL 2960355 (D. Nev. June 27, 2014) ...................... 13

*Buckeye Check Cashing, Inc. v. Cardegna,*
    546 U.S. 440 (2006) ..................................................................................................... 6

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
    207 F.3d 1126 (9th Cir. 2000) ............................................................................. 3, 4, 8

*City & Cnty. of Denver v. Dist. Court,*
    939 P.2d 1353 (Colo. 1997) ......................................................................................... 5

*City of Chicago v. Int'l Coll. of Surgeons,*
    522 U.S. 156 (1997) ................................................................................................... 14

ii

*Clark v. Honderman*,
  No. 2:19-CV-01807-KJD-DJA, 2021 WL 2688628 (D. Nev. Feb. 9, 2021) ......................... 13

*Cooper v. Equifax Info. Servs., LLC*,
  No. 2:19-CV-01124-JAD-DJA, 2020 WL 5848667 (D. Nev. Sept. 30, 2020) ...................... 12

*Cox v. Station Casinos, LLC*,
  No. 2:14-cv-638, 2014 WL 3747605 (D. Nev. June 25, 2014) ............................................. 6

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) .................................................................................................... 4, 5, 8

*Dominion Ins. Co. v. Hart*,
  498 P.2d 1138 (1972) .......................................................................................................... 8

*In re Eber*,
  687 F.3d 1123 (9th Cir. 2012) ........................................................................................... 13

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ........................................................................................................ 3

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ............................................................................................................. 9

*Godhart v. Tesla, Inc.*,
  No. 2:19-cv-01541, 2020 WL 2992414 (D. Nev. June 4, 2020),
  *aff'd*, 855 F. App'x 399 (9th Cir. 2021) ...................................................................... 4, 15

*Gov't Emps. Ins. Co. v. Dizol*,
  133 F.3d 1220 (9th Cir. 1998) ........................................................................................... 14

*Guzman v. MGK Mech. Servs., Inc.*,
  No. 2:09-CV-00467-RLH-GWF, 2009 WL 10693636 (D. Nev. June 29, 2009) .................. 13

*Hanks v. Briad Rest. Grp., L.L.C.*,
  No. 2:14-CV-00786-GMN, 2015 WL 4562755 (D. Nev. July 27, 2015) .............................. 8

*Hansen v. Musk*,
  No. 3:19-cv-00413-LRH-WGC, 2020 WL 4004800 (D. Nev. July 15, 2020) ....................... 6

*Harding v. Diamond Resorts Holdings, LLC*,
  No. 2:17-cv-00248, 2017 WL 6378967 (D. Nev. Dec. 13, 2017) .................................. 4, 15

*Matter of Henry*,
  944 F.3d 587 (5th Cir. 2019) ............................................................................................. 13

*Howard v. Navient Sol., LLC*,
  No. C18-5333, 2018 WL 5112634 (W.D. Wash. Oct. 18, 2018) .......................................... 12

iii

*Jaffey v. Del Taco Rests., Inc.,*
  No. 2:17-cv-2600, 2018 WL 3997261 (D. Nev. Aug. 21, 2018) ........................................... 5

*Jefferson Cnty. Sch. Dist. No. R-1 v. Shorey,*
  826 P.2d 830 (Colo. 1992) ................................................................................................... 5

*L&M Creations, Inc. v. CRC Information Systems,*
  No. 2:10-cv-00685, 2011 WL 1103636 (D. Nev. Mar. 23, 2011) ........................................ 5

*Lane v. Urgitus,*
  145 P.3d 672 (Colo. 2006) ................................................................................................ 5, 8

*In re Marriage of Popack,*
  998 P.2d 464 (Colo. App. 2000) ........................................................................................... 5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
  473 U.S. 614 (1985) .............................................................................................................. 7

*Mohazzabi v. Wells Fargo, N.A.,*
  No. 2:18-cv-02137, 2019 WL 4675768 (D. Nev. Sept. 25, 2019) ................................... 5, 13

*Moses v. Lending Club,*
  No. 2:17-cv-03071, 2019 WL 489092 (D. Nev. Feb. 6, 2019) ................................... 3, 4, 15

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983) ............................................................................................................. 6, 10

*Newell v. Am. Ins. Adm'rs, LLC,*
  No. 7:15-CV-00310, 2016 WL 627357 (W.D. Va. Feb. 16, 2016) ..................................... 12

*Ortiz v. SHAC LLC,*
  No. 2:20-cv-00621, 2021 WL 2425228 (D. Nev. June 11, 2021) .......................................... 5

*Perry v. Thomas,*
  482 U.S. 483 (1987) .............................................................................................................. 7

*Peterson v. Lyft, Inc.,*
  No. 16-cv-07343, 2018 WL 6047085 (N.D. Cal. Nov. 19, 2018) ....................................... 12

*Ramirez v. Cintas Corp.,*
  No. C 04-00281 JSW, 2005 WL 2894628 (N.D. Cal. Nov. 2, 2005) .................................... 8

*Rent-A-Center, West, Inc. v. Jackson,*
  561 U.S. 63 (2010) ............................................................................................................. 9, 10

*Republic of Nicar. v. Std. Fruit Co.,*
  937 F.2d 469 (9th Cir. 1991) ................................................................................................ 5

*Scherk v. Alberto-Culver Co.,*
  417 U.S. 506 (1974) .............................................................................................................. 5

iv

27981379.2/059641.0001

*Shearson/Am. Express, Inc. v. McMahon,*
    482 U.S. 220 (1987) ................................................................................. 3, 8

*Simula, Inc. v. Autoliv, Inc.,*
    175 F.3d 716 (9th Cir. 1999) ............................................................... 10, 11

*Southland Corp. v. Keating,*
    465 U.S. 1 (1984) ............................................................................................ 6

*Sparling v. Hoffman Constr. Co.,*
    864 F.2d 635 (9th Cir. 1988) ................................................................ 4, 15

*In re Thorpe Insulation Co.,*
    671 F.3d 1011 (9th Cir. 2012) ..................................................................... 13

*In re Trevino,*
    599 B.R. 526 (Bankr. S.D. Tex. 2019) ..................................................... 13

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv.*
    *Workers Int'l Union, AFL-CIO/CLC v. Vista Metals Corp.,*
    No. 5:19-cv-01781, 2020 WL 1639895 (C.D. Cal. April 1, 2020) .............. 9

*United Steelworkers of Am. v. Enter. Wheel and Car Corp.,*
    363 U.S. 593 (1960) ......................................................................................... 9

*United Steelworkers of Am. v. Warrior & Gulf Navig. Co.,*
    363 U.S. 574 (1960) ......................................................................................... 6

*In re Williams,*
    564 B.R. 770 (Bankr. S.D. Fla. 2017) ...................................................... 13

**Statutes**

9 U.S.C. § 1 ........................................................................................................ 7

9 U.S.C. § 2 ........................................................................................... 3, 4, 6, 8

9 U.S.C. § 3 ................................................................................................. 4, 15

9 U.S.C. § 4 ..................................................................................................... 3, 8

11 U.S.C. § 524 ................................................................................................. 3

Federal Arbitration Act ......................................................................... passim

15 U.S.C. § 1681 ......................................................................................... 3, 12

Nevada Deceptive Trade Practices Act NRS 598 ......................................... 3

Nevada Deceptive Trade Practices Act, NRS NRS 41.600 ..................... 3, 12

27981379.2/059641.0001

1

2

**Other Authorities**

3

Fed. R. Civ. P. 5(b), and § IV .................................................................................. 17

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27981379.2/059641.0001

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Navient Solutions, LLC ("Navient"), by and through its counsel, hereby submits this Memorandum of Points and Authorities in Support of its Motion to Compel Arbitration (the "Motion") as to the Complaint (the "Complaint") filed by Plaintiff Christina Fennell ("Plaintiff") and to dismiss or stay this case as to Plaintiff's claims against Navient.

## I.    INTRODUCTION

Plaintiff entered into binding agreements to arbitrate disputes with Navient pursuant to the Federal Arbitration Act and Colorado state law.  Plaintiff executed five Creative Education Loan Promissory Notes ("Agreements"), each with an arbitration provision.  Pursuant to the Agreements, Plaintiff expressly agreed to "arbitration – and require the other party to arbitrate [] any legal claim, dispute or controversy between you and me that arises from or relates in any way to this Note. . . ." *See* Declaration of Stephanie Box ("Box Decl."), Ex. 1 at § Q; Ex. 2 at § Q; Ex. 3 at § Q; Ex. 4 at § S; Ex. 5 at § T.[2]

In this case, Plaintiff asserts four causes of action against Navient, all of which relate to the Agreements between Plaintiff and Navient, and all of which are subject to mandatory arbitration. Therefore, Navient files this Motion respectfully requesting that the Court compel Plaintiff to pursue her claims against Navient in arbitration and stay this action pending completion of the arbitration.

## II.    BACKGROUND

In approximately July 2005, Plaintiff enrolled in the Art Institute of Colorado (hereinafter "AIC").  ECF 1 (hereinafter "Compl.") ¶ 22.  To finance her attendance at AIC, Plaintiff executed

---

[2] In connection with her attendance at AIC, Plaintiff also executed a Creative Education Loan Promissory Note that is silent as to arbitration (the "2005 Loan").  *See* Box Decl. Ex. 6. Nevertheless, and as set forth further below, such loan falls within the scope of the arbitration provisions, as Plaintiff's causes of action regarding the 2005 Loan are unquestionably within the scope of the later-executed Arbitration Agreements.

the Agreements, each of which contain valid and binding arbitration provisions. *See* Box Decl. Ex. 1-5. The arbitration provisions provide that any past, present, or future legal dispute or any claim of any kind, including statutory and common law claims, and claims for equitable relief, that relate in any way to the Promissory Note, will be resolved by binding arbitration. An example of one such arbitration agreement is below, and each of the Agreements contains substantially the same language with only immaterial differences (such agreement language, collectively, the "Arbitration Provisions"). *See* Box Decl., Exs. 1-5.

> To the extent permitted under federal law, you and I agree that either party may elect to arbitration – and require the other party to arbitrate – any Claim under the following terms and conditions. This Arbitration Agreement is part of the Creative Education Loan Promissory Note ("Note") . . . .
>
> **2. IMPORTANT WAIVERS: If you or I elect to arbitrate a Claim, you and I both waive the right to (1) have a court or jury decide the Claim; (2) PARTICIPATE IN A CLASS ACTION IN COURT OR ARBITRATION, WHETHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR OTHERWISE; (3) ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; OR (4) JOIN OR CONSOLIDATE CLAIM(S) WITH CLAIMS INVOLVING ANY OTHER PERSON IN COURT OR IN ARBITRATION. . . . The waivers in subsections (2)-(4) above are called the "Class Action and Multi-Party Waivers." The arbitrator shall have no authority to conduct any arbitration inconsistent with the Class Action and Multi-Party Waivers.**
>
> **3. DEFINITIONS:** In this Arbitration Agreement, the following definitions will apply: **"I," "me"** and **"my"** mean each and every Borrower and Cosigner on the Note; the Student on whose behalf the proceeds of the Note have been advanced; and the heirs, executors and assigns of all of the foregoing. **"You," "your"** and **"yours"** mean the Lender; any other subsequent holder of this note; Sallie Mae, Inc.; SLM Financial Corporation; all of their parents, wholly or majority owned subsidiaries and affiliates; any predecessors, successors and assigns of these entities. . . .
>
> **4. "CLAIM"** means any legal claim, dispute or controversy between you and me that arises from or relates in any way to this Note, including any dispute arising before the date of this Arbitration Agreement and any dispute relating to: (1) the imposition or collection of principal, interest, attorneys' fees, collection costs or other fees or charges relating to this Note; (2) other provisions of this Note; (3) any application, disclosure or other document relating in any way to this Note or the transactions evidenced by this Note. . . . This includes, without limitation, disputes concerning the validity, enforceability, arbitrability or scope of this Arbitration

2

> Agreement or this Note; disputes involving alleged fraud or misrepresentation, breach of contract or fiduciary duty, negligence or other torts, or violation of statute, regulation or common law. It includes disputes involving requests for injunctions or other equitable relief.

Box Decl., Ex. 5 at § T (emphasis in original). *See also e.g.*, Box Decl., Ex. 1 at § Q; Ex. 2 at § Q; Ex. 3 at § Q; Ex. 4 at § S. In addition, the arbitration provisions provide that arbitration shall be before the American Arbitration Association. *See* Box Decl., Exs. 1-5.

In July 2015, Plaintiff filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the District of Colorado, and received a discharge on or about September 18, 2020. Compl. ¶¶ 24, 29. Despite the terms of the Arbitration Provisions, on June 28, 2022, Plaintiff filed this Action asserting claims on behalf of Plaintiff and a purported nationwide class for (i) violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681; (ii) unjust enrichment; (iii) bankruptcy discharge injunction violations under 11 U.S.C. § 524; and on behalf of Plaintiff and a purported Nevada subclass for (iv) violations of the Nevada Deceptive Trade Practices Act NRS 598 and NRS 41.600 ("NDTPA"). *See generally* Compl.

## III.   **ARGUMENT**

### a.   **Legal Standard**

The Federal Arbitration Act ("FAA") states that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy" arising out of the contract or transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 232-33 (2013); *Moses v. Lending Club*, No. 2:17-cv-03071, 2019 WL 489092, at *1 (D. Nev. Feb. 6, 2019).

Thus, the FAA permits any party who is "aggrieved by the alleged failure, neglect, or refusal

3

of another to arbitrate under a written agreement for arbitration" to petition any federal district court for an order compelling arbitration "in the manner provided for in [the parties'] agreement." 9 U.S.C. § 4; *Moses*, 2019 WL 489092 at *1. The FAA "leaves no place for the exercise of discretion . . . but instead mandates that . . . courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citation omitted). Accordingly, any doubts concerning arbitrability must be resolved in favor of arbitration. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).

"The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* at 1130; *Moses*, 2019 WL 489092 at *1.

Upon finding a valid arbitration agreement encompassing the dispute at issue, courts can either stay the case pending resolution of arbitration or dismiss the proceedings without prejudice. 9 U.S.C. § 3; *Moses*, 2019 WL 489092, at *4 (granting defendant's motion to compel and dismissing the claim without prejudice because plaintiff's only claim fell within the scope of the arbitration agreement). *See also Harding v. Diamond Resorts Holdings, LLC*, No. 2:17-cv-00248, 2017 WL 6378967, at *6 (D. Nev. Dec. 13, 2017) (granting defendant's motion to compel and dismissing the case without prejudice); *Godhart v. Tesla, Inc.*, No. 2:19-cv-01541, 2020 WL 2992414, at *4-5 (D. Nev. June 4, 2020) (dismissing plaintiff's claims without prejudice and ordering the parties arbitrate the claims in accordance with their agreement because all of plaintiff's claim fell within the arbitration agreement's scope), *aff'd*, 855 F. App'x 399 (9th Cir. 2021); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (affirming dismissal of claims because the parties agreed to

4

1    submit such claims to arbitration).

2        **b.     Federal and Colorado Law Apply to the Contract.**

3        The Agreements between Plaintiff and Navient forming the basis for the claims asserted here

4    contain a choice of law provision providing that applicable federal law and Colorado law ("to the

5    extent not preempted") apply to the Agreements. *See* Box Decl., Ex. 1 at § M(3); Ex. 2 at § M(3);

6    Ex. 3 at § M(3); Ex. 4 at § O(3); Ex. 5 at § P(3).

7

8        **c.     The Federal Arbitration Act Governs the Arbitration of Plaintiff's Claims.**

9        The FAA provides that an agreement to submit commercial disputes to arbitration "shall be

10   valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

11   revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (*citing*

12   9 U.S.C. § 2). The FAA was designed "to overrule the judiciary's longstanding refusal to enforce

13   agreements to arbitrate," and to place such arbitration agreements "upon the same footing as other

14   contracts." *Dean Witter Reynolds*, 470 U.S. at 219-220; *Scherk v. Alberto-Culver Co.*, 417 U.S.

15   506, 511 (1974); *Ortiz v. SHAC LLC*, No. 2:20-cv-00621, 2021 WL 2425228, at *1 (D. Nev. June

16   11, 2021). While legislators were aware that the Act would encourage the expeditious resolution of

17

18   disputes, its passage "was motivated, first and foremost, by a congressional desire to enforce

19   agreements into which parties had entered." *Dean Witter Reynolds*, 470 U.S. at 220.

20       This Court[3] recognizes that "strong public policy favors arbitration because arbitration

21   generally avoids the higher costs and longer time periods associated with traditional litigation."

22

23   _____

24   [3] To the extent state law has any impact, Colorado courts have similarly recognized that strong
     public policy favors arbitration. *Lane v. Urgitus*, 145 P.3d 672, 678 (Colo. 2006) ("[A]rbitration is
25   a favored method of dispute resolution"); *BFN-Greeley, LLC v. Adair Grp., Inc.*, 141 P.3d 937, 939
     (Colo. App. 2006) ("Colorado encourages the settlement of disputes through arbitration."); *City &*
26   *Cnty. of Denver v. Dist. Court*, 939 P.2d 1353, 1363-64 (Colo. 1997) (under the "strong public
     policy of encouraging alternative dispute resolution," a district court must compel arbitration unless
27   it can say with positive assurance that the arbitration clause "'is not susceptible of any interpretation
28

                                        5

*Jaffey v. Del Taco Rests., Inc.*, No. 2:17-cv-2600, 2018 WL 3997261, at *2 (D. Nev. Aug. 21, 2018);

*L&M Creations, Inc. v. CRC Information Systems*, No. 2:10-cv-00685, 2011 WL 1103636, at *5

(D. Nev. Mar. 23, 2011).

Ordinarily, a district court does not have discretion to deny a motion to compel arbitration

under the FAA because the Act is phrased in mandatory terms. *Mohazzabi v. Wells Fargo, N.A.*,

No. 2:18-cv-02137, 2019 WL 4675768, *2 (D. Nev. Sept. 25, 2019) (citing *Republic of Nicar. V.*

*Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991)).  "The FAA leaves no place for the exercise of

discretion by a district court; the court must direct the parties to proceed to arbitration on issues as

to which an arbitration agreement has been signed." *Beard v. Santander Consumer USA, Inc.*, No.

1:11-cv-11-1815, 2012 WL 1292576, at *3 (E.D. Cal. April 13, 2021) (citing *Dean Witter Reynolds*

*v. Byrd*, 470 U.S. 213, 218 (1985)).[4]

The Supreme Court has emphasized that courts should refer a matter for arbitration "unless

it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation

that covers the asserted dispute," and "[i]n the absence of any express provision excluding a

particular grievance from arbitration ... only the most forceful evidence of a purpose to exclude the

claim from arbitration can prevail.  Thus, any doubt about the applicability of an arbitration clause

must be 'resolved in favor of arbitration." *Hansen v. Musk*, No. 3:19-cv-00413-LRH-WGC, 2020

WL 4004800, at *4 (D. Nev. July 15, 2020) (citing *United Steelworkers of Am. v. Warrior & Gulf*

*Navig. Co.*, 363 U.S. 574, 582-89 (1960)); *Cox v. Station Casinos, LLC*,  No. 2:14-cv-638, 2014

---

that encompasses the subject matter of the dispute'") (quoting *Jefferson Cnty. Sch. Dist. No. R-1 v.*
*Shorey*, 826 P.2d 830, 840 (Colo. 1992)); *In re Marriage of Popack*, 998 P.2d 464, 467 (Colo. App.
2000) ("All doubts [about] whether a dispute is arbitrable are to be resolved in favor of arbitration.").

[4] As further set forth below, certain courts have found that discretion exists with respect to the
arbitrability of bankruptcy-related claims because of the potential for interference with the operation
of the Bankruptcy Code.

27981379.2/059641.0001

WL 3747605, at *8 (D. Nev. June 25, 2014) (citing *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986)); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("'[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . . [A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

The FAA applies in federal court and to state-law claims brought in state court. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) ("[T]he FAA 'create[d] a body of federal substantive law,' which was 'applicable in state and federal courts.' We rejected the view that state law could bar enforcement of § 2, even in the context of state-law claims brought in state court.") (*citing Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270-273 (1995)).

Specifically, Section 2 of the FAA provides in pertinent part:

A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "The effect of [Section 2] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24. Accordingly, the FAA governs any (1) written arbitration provision (2) in a contract evidencing a transaction "involving commerce." In this action, the Arbitration Provisions satisfy both requirements.

*First*, the Arbitration Provisions are in writing.

*Second*, the Agreements indisputably are contracts "involving commerce." The FAA defines "commerce" as "commerce among the several States." 9 U.S.C. § 1. The words 'involving commerce' are to be interpreted broadly since the FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." *Perry v.*

*Thomas*, 482 U.S. 483, 490 (1987).  The phrase 'evidencing a transaction' simply means that 'the 'transaction' in fact 'involves' interstate commerce, "even if the parties did not contemplate an interstate commerce connection.'"  *Allied-Bruce Terminix*, 513 U.S. at 281 ("[W]e conclude that the word 'involving' is broad and is indeed the functional equivalent of 'affecting'")  *Id.* at 273-74.

Here, the Arbitration Provisions expressly state that they are governed by the FAA: "This Arbitration Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA."  *See* Box Decl., Ex. 1 at § Q(8).  *See also* Box Decl., Ex. 2 at § Q(8); Ex. 3 at § Q(8); Ex. 4 at § S(9); Ex. 5 at § T(9).  Additionally, Navient, and its corporate predecessors and affiliates, were national servicers and originator of student loans at the time the Agreements were made.  *See* Box Decl. at 11.  Therefore, there is no question the Agreements are contracts involving interstate commerce.

Accordingly, the FAA governs the Arbitration Provision, and as a result, the Court must apply federal substantive law under the FAA to determine whether the parties agreed to arbitrate this dispute.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.  The court is to make this determination by applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.") (internal quotations and citation omitted).

### d.    Plaintiff is Required to Arbitrate these Claims Against Navient.

To be enforceable, an arbitration agreement must satisfy the following conditions: (1) the existence of a written agreement to arbitrate claims, (2) a nexus to interstate commerce, and (3) coverage of the claims by the arbitration clause.  9 U.S.C. § 2; *see also Hanks v. Briad Rest. Grp., L.L.C.*, No. 2:14-CV-00786-GMN, 2015 WL 4562755, at *2 (D. Nev. July 27, 2015).  "Once the court has determined that an arbitration agreement relates to a transaction involving interstate

commerce, thereby falling under the FAA, the court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement." *Ramirez v. Cintas Corp.,* No. C 04-00281 JSW, 2005 WL 2894628, at *3 (N.D. Cal. Nov. 2, 2005) (citing 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000)).

As a matter of public policy, Colorado courts encourage arbitration and liberally construe arbitration clauses in favor of granting arbitration. *Lane v. Urgitus,* 145 P.3d 672, 678 (Colo. 2006) ("If ambiguities are found in the arbitration agreement, we afford the parties a presumption in favor of arbitration and resolve doubts about the scope of the arbitration clause in favor of arbitration."); *Dominion Ins. Co. v. Hart,* 498 P.2d 1138, 1140 (Colo. 1972) (noting arbitration is favored in Colorado).

A court may not consider the merits of the claims in deciding an arbitration motion. *See, e.g., AT&T Techs., Inc.,* 475 U.S. at 649. In fact, the FAA generally eliminates a court's discretion and requires the court to compel arbitration of issues covered by the signed arbitration agreement: "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *See Dean Witter Reynolds,* 470 U.S. at 218; *Shearson/American Express,* 482 U.S. at 226-27.

Here, valid arbitration agreements exist between Plaintiff and Navient, and Plaintiff's claims fall squarely within the scope of the arbitration provisions.

### i.    Valid Arbitration Agreements Exist and Delegate Arbitrability Determinations to the Arbitrator.

As detailed above, there can be no dispute that valid arbitration agreements exist between Plaintiff and Navient under the terms of the Agreements. Box Decl., Exs. 1-5. In any event, the Court need not address the threshold question of whether a valid and enforceable arbitration

9

agreement exists between Plaintiff and Navient because the parties expressly delegated this role to the arbitrator.   The Arbitration Provision specifically provides that Claims "includ[ing]…the applicability or scope of this Arbitration Agreement or Note" shall be resolved by arbitration.  Box Decl., Exs. 1-5.

The "interpretation of the underlying contract is an issue for the arbitrator to decide, even though contract construction is generally a question of law," and even if the arbitrator is not an attorney.  *Benson Pump Co. v. South Cent. Pool Supply, Inc.*, 325 F. Supp. 2d 1152, 1158 (D. Nev. 2004) (citing *United Steelworkers of Am. v. Enter. Wheel and Car Corp.*, 363 U.S. 593, 599 (1960)). "[B]ecause arbitration is a matter of contract, the parties may validly agree that an arbitrator should decide questions regarding the arbitrator's own jurisdiction. As such, the question of arbitrability is for the arbitrator where the arbitration clause is 'broad.'"  *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC v. Vista Metals Corp.*, No. 5:19-cv-01781, 2020 WL 1639895, at *4 (C.D. Cal. April 1, 2020) (citations omitted).   As the Supreme Court explained:

> The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. This line of cases merely reflects the principle that arbitration is a matter of contract.  An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69-70 (2010); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ([T]he question "who has the primary power to decide arbitrability" turns upon what the parties agreed about *that* matter.").

Here, Plaintiff and Navient agreed to submit the question of whether the dispute is subject to arbitration to the arbitrator.  Box Decl., Exs. 1-5.  Specifically, the parties agreed to arbitrate the "arbitrability or scope of this Arbitration Agreement or this Note."  *Id.*  To the extent that any

10

27981379.2/059641.0001

challenge to the arbitrability of the claim or dispute is made, the arbitrator, not the Court, should resolve these issues.  *Rent-A-Center*, 561 U.S. at 69 (holding delegation clause in arbitration provision grants arbitrator exclusive authority to resolve any dispute relating to the agreement's enforceability).

        **ii.**      **Plaintiff's Claims Fall within the Scope of the Arbitration Provisions.**

While arbitrability determinations should be left to the arbitrator because the parties' agreements includes a delegation clause, there can be no doubt that Plaintiff's claims against Navient fall squarely within the scope of the arbitration provision.  The FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (same); *Beard*, 2012 WL 1292576, at *3.

        **1.**      **The Factual Predicate underlying All of Plaintiff's Claims Fall within the Arbitration Provisions**

In this action, Plaintiff's claims relate to the Agreements and Navient's actions regarding her account. *See* Compl.  For example, Plaintiff alleges Navient wrongfully "attempt[ed] to collect on [her] private student loan debt" that she received through her Creative Education Loan, which is within the scope of the arbitration provisions. *See* Compl., ¶ 31; Box Decl., Ex. 5, § T(4) ("[E]ither party may elect to arbitrate – and require the other party to arbitrate – any Claim" including "any dispute relating to [] the imposition or collection of principal, interest, attorneys' fees, collection costs or other fees or charges relating to this Note; [and] other provisions of this Note; [and] any application, disclosure or other document relating in any way to this Note or the transactions evidenced by this Note"). *See also* Box Decl., Exs. 1-4.  Plaintiff's allegations specifically relate to the Agreements and Navient's servicing, credit reporting, and collection activity for Plaintiff's account pursuant to those Agreements.

Further, the factual predicates surrounding Plaintiff's claims with respect to the 2005 Loan

have a direct relationship to the factual predicates surrounding Plaintiff's claims regarding the Agreements, thus placing disputes regarding the 2005 Loan within the Arbitration Provisions. The Arbitration Provisions provide for arbitration of any disputes that "relate to" the Agreements. The Ninth Circuit interprets such language to encompass "any disputes that have 'a significant relationship to,' or at least 'some direct relationship'" to the agreements subject to the Arbitration Provisions. *Balan v. Tesla, Inc.*, 840 F. App'x 303, 304 (9th Cir. 2021). Indeed, factual allegations need only "touch matters" covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d at 721.

Here, the overlap between the facts (and causes of actions) of Plaintiff's claims on account of the Agreements and on account of the 2005 Loan is nearly total: The Agreements and the 2005 Loan each involve the same borrower (Plaintiff), are for attendance at the same school (AIC), were subject to Plaintiff's bankruptcy proceeding, and on information and belief were/are subject the same policies Navient employs with respect to the servicing, credit reporting, and collection of debts following a bankruptcy proceeding. Indeed, there appears to be no significant determination with respect to any of Plaintiff's claims regarding the Agreements that would not apply with equal force to the servicing, credit reporting, and collections with respect to the 2005 Loan. As such, all of Plaintiff's claims with respect to the 2005 Loan, at minimum, "relate to" her claims on account of the Agreements, and accordingly the claims on account of the 2005 Loan are subject to mandatory arbitration.[5]

### 2. Each of the Remedies Sought by Plaintiff Fall within the Arbitration Provisions

There can be no dispute that Plaintiff's remedies are likewise covered by the terms of the

---

[5] To the extent any question arises as to the scope of the arbitrability clauses contained in the Agreements, Plaintiff has agreed that the arbitrator should adjudicate such questions. *See* Box Decl., Exs. 1-5.

arbitration provision:  Plaintiff seeks actual and punitive damages under her various theories, declaratory relief, and equitable relief to "enjoin Defendant[s] from engaging in the wrongful acts and omissions complained of herein."  *See* Compl. ¶¶ 141-180.  As detailed above, Plaintiff expressly agreed to arbitrate "any legal claim, dispute or controversy" between herself and Navient that "arises from or relates in any way to this Note" including "the imposition or collection of principal, interest, attorneys' fees, collection costs or other fees or charges relating to this Note" and "other provisions of this Note." Box Decl., Exs. 1-5.  The arbitration provision specifically provides that its scope includes "disputes involving requests for injunctions or other equitable relief" and "disputes involving … violation of statute, regulation or common law," which Plaintiff seeks in her Complaint.  Compl., ¶ 50; Prayer for Relief; Box Decl., Ex. 5, § T(4).  *See also* Box Decl., Exs. 1-4.

### 3.   Each of Plaintiff's Causes of Action Fall within the Arbitration Provisions

Each of Plaintiff's causes of action fall within the arbitration provisions.  Plaintiff alleges causes of action (a) under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*, (the "FCRA"), (b) for unjust enrichment, (c) under the Nevada Deceptive Trade Practices Act, NRS 598 *et seq.* (the "NDTPA"), and (d) for violations of the bankruptcy discharge injunction.

This Court, and other courts within the Ninth Circuit, have previously held that claims under the FCRA are subject to mandatory arbitration.  *See Cooper v. Equifax Info. Servs., LLC*, No. 2:19-CV-01124-JAD-DJA, 2020 WL 5848667, at *4 (D. Nev. Sept. 30, 2020); *Peterson v. Lyft, Inc.*, No. 16-cv-07343, 2018 WL 6047085, at *3 (N.D. Cal. Nov. 19, 2018) ("[Plaintiff's] FCRA claim arises out of [defendant's] background checks, and hence the claim is at least loosely related to a 'legal dispute[ ] or claim[ ] arising out of the Agreement' that the parties agreed to arbitrate."); *Howard v. Navient Sols., LLC,* No. C18-5333, 2018 WL 5112634, at *3 (W.D. Wash. Oct. 18, 2018) (holding that plaintiff's FCRA claims based on defendant's "misreporting of [plaintiff's] obligations after the

bankruptcy settlement" were covered by an arbitration agreement "phrased to cover any claim that 'arises from or relates in any way to the Note'") (emphasis omitted); *Newell v. Am. Ins. Adm'rs, LLC*, No. 7:15CV00310, 2016 WL 627357, at *3 (W.D. Va. Feb. 16, 2016) (finding that an arbitration agreement governed plaintiff's FCRA claims, when "the Agreement was the source of the alleged debt and [plaintiff's] payment obligations" and provided that "'all claims ... arising out of or relating to' the Agreement" were subject to arbitration).

Similarly, this Court has repeatedly held that claims under the NDTPA are subject to mandatory arbitration. *See*, *e.g*, *Clark v. Honderman*, No. 2:19-CV-01807-KJD-DJA, 2021 WL 2688628, at *3 (D. Nev. Feb. 9, 2021) (enforcing arbitration of NDTPA claims); *Mohazzabi v. Wells Fargo, N.A.*, No. 2:18-CV-02137-RFB-VCF, 2019 WL 4675768, at *4 (D. Nev. Sept. 25, 2019) (same).

Further, there is nothing regarding Plaintiff's unjust enrichment claim that would except it from mandatory arbitration:  It is a common law cause of action that is routinely subject to arbitration. *See, e.g, BTG180, LLC v. Fun Club USA, Inc.*, No. 2:14-CV-188 JCM (NJK), 2014 WL 2960355, at *2 (D. Nev. June 27, 2014) (compelling arbitration of unjust enrichment claim); *Guzman v. MGK Mech. Servs., Inc.*, No. 2:09-CV-00467-RLH-GWF, 2009 WL 10693636, at *3 (D. Nev. June 29, 2009).

Unlike with respect to her other claims, the Court has discretion whether to compel arbitration of Plaintiff's bankruptcy discharge violation claims.  Such discretion is rooted in concern that, in certain circumstances, arbitration of bankruptcy-related claims may interfere with the operation and purposes of the Bankruptcy Code.  *See, e.g.*, *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1021 (9th Cir. 2012) ("[A] bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the Bankruptcy Code.").  Nevertheless, courts have found that claims similar to Plaintiff's discharge

14

violation claims are arbitrable. *See In re Trevino*, 599 B.R. 526, 549 (Bankr. S.D. Tex. 2019) (compelling arbitration of discharge violation claims and federal and state debt-collection law claims); *In re Williams*, 564 B.R. 770, 783 (Bankr. S.D. Fla. 2017).

The Ninth Circuit, and certain other circuit courts, have held that it is not an abuse of discretion for a court to decline to enforce arbitration of cases involving solely the question of bankruptcy discharge violation claims. *See e.g.*, *In re Eber*, 687 F.3d 1123, 1131 (9th Cir. 2012); *Matter of Henry*, 944 F.3d 587, 590 (5th Cir. 2019) (noting bankruptcy court had discretion regarding whether to compel arbitration of adversary proceeding to determine discharge ability of a debt); *In re Anderson*, 884 F.3d 382, 392 (2d Cir. 2018) (noting it was not an abuse of discretion for a bankruptcy judge to refuse to compel arbitration of bankruptcy discharge violation claims).

The Ninth Circuit has not directly addressed the situation presented here, where bankruptcy discharge violation claims are presented in a district court alongside claims that are subject to mandatory arbitration. Nevertheless, to the extent discretion exists to enforce the arbitration provisions in Plaintiff's promissory notes with regard to her discharge violation claims, the Court should compel arbitration of such claims. There is no prospect of arbitration interfering with the administration of Plaintiff's bankruptcy case, as that case is fully administered and has long since closed. Nor, respectfully, does this Court appear to have special expertise or familiarity with bankruptcy issues such that adjudication of such claims in this Court is inherently superior to the determinations that an arbitrator may make.

Further, arbitration of the discharge claims makes sense, as no discretion exists as to the arbitrability of Plaintiff's FCRA claim and other state-law claims, and thus arbitration must move forward in any event. Plaintiff's discharge claims share a common nucleus of operative facts with her other claims. As such, the Court should exercise any discretion it has to submit the discharge violation claims to arbitration given the interdependence of the claims, the risk of duplication of

15

1    effort in simultaneous litigation and arbitration of similar claims, and the risk of inconsistent

2    decisions and inefficiencies.   This is indeed the same rationale behind the analogous exercise of

3    supplemental jurisdiction by federal courts to prevent the piecemeal litigation of claims.  *See Gov't*

4    *Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225-26 (9th Cir. 1998) ("If a federal court is required to

5    determine major issues of state law because of the existence of non-discretionary claims, the

6    declaratory action should be retained to avoid piecemeal litigation."); *see also City of Chicago v.*

7    *Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997) ("[D]istrict courts [should] deal with cases

8    involving pendent claims in the manner that best serves the principles of economy, convenience,

9    fairness, and comity which underlie the pendent jurisdiction doctrine"); *Bahrampour v. Lampert*,

10   356 F.3d 969, 978 (9th Cir. 2004) ("[A] district court must undertake a case-specific analysis to

11   determine whether declining supplemental jurisdiction 'comports with the underlying objective of

12   most sensibly accommodat[ing] the values of economy, convenience, fairness and comity.'")

13   (citation omitted).

14

15

16        **e.        The Court Should Dismiss this Action Pending Arbitration.**

17        Pursuant to Section 3 of the FAA, Navient seeks a dismissal of this Action without prejudice.

18   Section 3 of the FAA provides upon finding a valid arbitration agreement encompassing the dispute

19   at issue, courts can either stay the case pending resolution of arbitration or dismiss the proceedings

20   without prejudice.  9 U.S.C. § 3; *Moses*, 2019 WL 489092, at *4 (granting defendant's motion to

21   compel and dismissing the claim without prejudice because plaintiff's only claim fell within the

22   scope of the arbitration agreement). *See also Harding v. Diamond Resorts Holdings, LLC*, No. 2:17-

23   cv-00248, 2017 WL 6378967, at *6 (D. Nev. Dec. 13, 2017) (granting defendant's motion to compel

24   and dismissing the case without prejudice); *Godhart v. Tesla, Inc.*, No. 2:19-cv-01541, 2020 WL

25   2992414, at *4-5 (D. Nev. June 4, 2020) (dismissing plaintiff's claims without prejudice and

26   ordering the parties arbitrate the claims in accordance with their agreement because all of plaintiff's

27

28

16

claim fell within the arbitration agreement's scope); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (affirming dismissal of claims because the parties agreed to submit such claims to arbitration).

Accordingly, Navient requests the Court dismiss this matter without prejudice.[6]

## IV.   **CONCLUSION**

For all of the foregoing reasons, Navient respectfully requests that this Court order Plaintiff to arbitrate her claims in the American Arbitration Association and dismiss, or in the alternative, stay these proceedings.

DATED: August 18, 2022                   Respectfully submitted,

                                                           */s/ DRAFT*
                                                           Anthony W. Austin, Esq.
                                                           Nevada Bar No. 10850
                                                           Kendall M. Lovell, Esq.
                                                           Nevada Bar No. 15590
                                                           **FENNEMORE CRAIG, P.C.**
                                                           9275 W. Russell Rd., Suite 240
                                                           Las Vegas, Nevada 89148
                                                           Telephone: (702) 692-8000
                                                           Facsimile: (702) 692-8099
                                                           Email: aaustin@fennemorelaw.com
                                                           Email: klovell@fennemorelaw.com

                                                           K. Elizabeth Sieg (*pro hac vice* forthcoming)
                                                           Benjamin J. Sitter (*pro hac vice* forthcoming)
                                                           **MCGUIREWOODS LLP**
                                                           800 East Canal Street
                                                           Richmond, Virginia 23219
                                                           Telephone: 804.775.1000
                                                           Email: bsieg@mcguirewoods.com
                                                           Email: bsitter@mcguirewoods.com

                                                           *Attorneys for Navient Solutions, LLC*

---

[6] Navient reserves the right, should the Court decline to compel arbitration, to seek the dismissal and/or transfer of this case on all of the grounds set forth in the answer that Navient is filing contemporaneously with this motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

27981379.2/059641.0001

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing Procedures, I hereby certify that on August 18, 2022, a true and correct copy of the foregoing was served via the Court's ECF filing system on all counsel of record.

1.    On August 18, 2022, I served the following document(s):

**DEFENDANT NAVIENT SOLUTIONS, LLC'S
MOTION TO COMPEL ARBITRATION**

2.    I served the above-named document(s) by the following means to the persons as listed below:

**[X]**    a.    ECF System (attach the "Notice of Electronic Filing" or list all persons and address):

George Haines, Esq.
Gerardo Avalos, Esq.
8985 S. Eastern Ave., Suite 350
Las Vegas, NV 89123
702.880.5554  ext. 222
Fax No: 702.385.5518
Email: Ghaines@freedomlegalteam.com

*Attorneys for Plaintiff Christina Fennell
and on behalf of all others similarly situated*

[ ]    b.    United States mail, postage fully prepared (list persons and addresses):

[ ]    c.    Personal Service (List persons and addresses):

[ ] For a party represented by an attorney, delivery was made by handling the document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

[ ] For a party, deliver was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

[ ]    d.    By direct email (as opposed to through the ECF system (list persons and email addresses):

19

1    Based upon the written agreement of the parties to accept service by email or a
2  court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other
3  indication that the transmission was unsuccessful.

4  [ ]    e.    By fax transmission (list persons and fax numbers):

5    Based upon the written agreement of the parties to accept service by fax
6  transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below.  No error was reported by the fax machine that I used.  A copy of the record of the fax
7  transmission is attached.

8  [ ]    f.    By messenger:

9    I served the document(s) by placing them in an envelope or package addressed to
10  the persons at the addresses listed below and providing them to a messenger service.  (A declaration by the messenger must be attached to this Certificate of Service).

11  I declare under penalty of perjury that the foregoing is true and correct.

12

13                              /s/ Agnes R. Wong
14                              An Employee of Fennemore Craig, P.C.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20

27981379.2/059641.0001