George Haines, Esq.
Nevada Bar No. 9411
**FREEDOM LAW FIRM**
8985 S. Eastern Ave., Suite 350
Las Vegas, NV 89123
Telephone: (702) 880-5554
Facsimile:  (702) 385-551
georgehaines@freedomlegalteam.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTINA FENNELL, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>NAVIENT SOLUTIONS, LLC,<br><br>Defendant. | Case No.: 2:22-cv-01013-CDS-NJK<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

Plaintiff Christina Fennell, individually and on behalf of all others similarly situated ("Plaintiff") submits this Opposition to Defendant Navient Solutions, LLC's ("Defendant" or "Navient") Motion to Compel Arbitration (ECF No. 20).

## Introduction

Navient's Motion should be denied for myriad reasons, principally because the claims alleged in this action are in response to Navient's attempts to collect discharged debt. In addition, Navient's Motion suffers from disputed factual issues of contract formation. Namely, Navient is not a party to the alleged agreement to arbitrate with

1

Plaintiff.[1] Navient cannot first lay any foundation that the Agreements are what Navient claims them to be, valid and enforceable, as Navient was not privy to their formation. Nor has Navient offered any evidence just how it came into possession of the documents Plaintiff allegedly executed. Navient's Motion is deficient and does not apprise Plaintiff of the material facts necessary to compel arbitration.

**Statement of Disputed Facts**

In July 2005, Plaintiff enrolled in the Art Institute of Colorado. *Complaint* ECF No. 1 ¶22. For the duration of her attendance, Plaintiff borrowed roughly $73,873. *Id.* at ¶23.

In borrowing the funds, Plaintiff is alleged to have executed various "Agreements" that "contain valid and binding arbitration provisions." ECF No. 20, pp.9-10. Via footnote (ECF No. 20, n.2), Navient acknowledges Plaintiff's initial "Agreement" did not contain an arbitration clause.

In support of this fact, Navient offers the Declaration of Stephanie Box, a Navient employee, who attests to the company's records. ECF No. 22-1. Ms. Box avers under penalty of perjury the "records were made and kept in the regular course of [Navient]'s business, at or near the time the acts, conditions, opinions or events recorded therein, and *were recorded by or from information transmitted by persons having knowledge of*

---

[1] Plaintiff anticipates, on reply, Navient, now aware of critical deficiencies in its Motion, will attempt to introduce new evidence and new arguments in support of its Motion to Compel Arbitration. Plaintiff respectfully requests the Court deny consideration of any new evidence or grant a sur-reply to Plaintiff for any evidence not previously submitted in support of Defendant's Motion. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief"); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("[W]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond").

*the information reflected in the records*." *Id.* ¶10 (emphasis added). In addition, Ms. Box vaguely attests, "Navient (*through its corporate predecessors*) was a national servicer and originator of student loans at the time the Agreements (as defined in the Motion) were made." *Id.* at ¶11 (emphasis added). Ms. Box does not say Navient was the originator or servicer of Plaintiff's student loans, or detail how long she has been an employee of Navient, whether she was so employed at the time of Plaintiff's loan applications in 2006-2008, or identify anyone within Navient that has personal knowledge of the Agreements. *See id.*

Plaintiff remembers signing only one application with a wet signature and the rest she signed electronically with the click of a few buttons. *Declaration of Christina Fennell* ¶7 attached hereto as Exhibit "1". She does not recall being presented with the promissory notes and does not recall ever being provided a copy of her applications with promissory notes. *Id.* at ¶¶8-9.[2]

The first application executed by Plaintiff that allegedly included a promissory note identified the parties as Plaintiff and "Sallie Mae (through FNB Sioux Falls)" in March 2006. ECF No. 22-7. FNB Sioux Falls is The First National Bank in Sioux Falls. *Id.* at p.6. Neither the Application signed by Plaintiff on March 6, 2006 nor the purported accompanying promissory note contained an arbitration clause. *See id.*

Plaintiff subsequently signed five more Creative Education Loan applications, all but one was executed electronically. ECF Nos. 22-2; 22-3; 22-4; 22-5; 22-6. These

---

[2] To be clear, Plaintiff does not dispute signing the applications or that Sallie Mae Bank funded her education. Plaintiff disputes both knowledge and receipt of the unsigned promissory notes that purportedly contain arbitration clauses.

applications were virtually identical to the first application except the lender listed is just Sallie Mae Bank. *Id.* As relevant here, the five latter promissory notes that purportedly accompany the applications included arbitration clauses. *See* ECF Nos. 22-2, pp.6-7; 22-3, pp.6-7; 22-4, pp.6-7; 22-5, pp.8-9; 22-6, pp.9-11. None of the applications signed by Plaintiff provide any notice the promissory notes now contain arbitration clauses, and there is no requirement that either Plaintiff or anyone else ever initial the fact that there was an arbitration clause. *Id.* at p.2. No one in the financial aid office at the Art Institute of Colorado ever discussed arbitration with Plaintiff. *Fennell Decl.* ¶¶10-11.

The final application and accompanying promissory note, proffered by Defendant (ECF No. 20, pp.10-11) further stated the Arbitration Agreement was between the "Borrower and Cosigner" and "the Lender, any other subsequent holder of this note; Sallie Mae, Inc.; SLM Financial Corporation; all of their parents, wholly or majority owned subsidiaries and affiliates; any predecessors, successors and assigns of these entities…" ECF No. 22-6, p.9. As discussed herein, Navient has not produced any evidence it is the "subsequent holder of th[e] note" a "parent, wholly or majority owned subsidiar[y] and affiliate[]" or a "successor[] and assign[]" of the Lender, Sallie Mae Bank.

Plaintiff graduated from the Art Institute of Colorado in September 2008. ECF No. 1 ¶23. On or about July 31, 2015, Plaintiff filed for Chapter 13 bankruptcy. *Id.* at ¶24. The purported obligations to Navient were scheduled in the bankruptcy petition

and Navient received notice of the bankruptcy. *Id.* at ¶25. On or about September 18, 2020, Plaintiff received a bankruptcy discharge under 11 U.S.C. § 1328(a). *Id.* at ¶29. Included in the discharge were Plaintiff's private student loans. *Id.* at ¶30.

Since receiving her bankruptcy discharge, Plaintiff has received numerous communications in the form of debt collection letters and collection telephone calls from Navient attempting to collect on the private student loan debt that was discharged in her bankruptcy. *Id.* at ¶31. Navient demands that Plaintiff resolve her "delinquency" and pay $11,473.44 toward her discharged debt to avoid defaulting on the private student loans. *Id.* at ¶33. Navient also claimed her account is under review for litigation. *Id.* at ¶34.

**<u>Standard of Review for Motions to Compel Arbitration</u>**

A motion to compel arbitration is evaluated under the "the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Accordingly, arbitration should only be compelled where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking to compel arbitration bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the nonmoving party must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 586–87 (1986). However, as discussed herein, Navient has not met its burden since it failed to provide the necessary proof to establish its right to compel arbitration.

"Generally, a court must determine two issues before deciding whether to compel arbitration: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021). "Because the FAA does not 'alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them),' state law governs this inquiry." *Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 831 (9th Cir. 2022) (*quoting Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009)). Navient, "the party seeking to compel arbitration, must prove the existence of a valid agreement by a preponderance of the evidence." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019).

Compelling arbitration is appropriate under the FAA only when there is "a judicial conclusion" that there is a validly formed, express agreement to arbitrate. *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 303 (2010). The language of the FAA itself says the district court will enter an order to arbitrate only "upon being satisfied" there is an agreement to arbitrate. 9 U.S.C. § 4. If there is an unresolved dispute over the existence of an arbitration agreement, the court conducts a "restricted inquiry into factual issues." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). The FAA's strong policy in favor of arbitration

is irrelevant in the absence of a valid and enforceable contract between the parties. *See e.g., Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n. 11 (9th Cir. 2006).

## **Argument**

> *A. Navient's Arbitration Agreement Conflicts with the Purposes of the Bankruptcy Code and Should be Denied.*

Navient's Motion to Compel Arbitration should be rejected because an arbitration clause should not prevent a court from resolving creditor abuses involving the bankruptcy process itself, such as violations of the discharge injunction, as these proceedings are clearly core proceedings and directly implicate the purposes of the Bankruptcy Code. *See Anderson v. Credit One Bank (In re Anderson),* 884 F.3d 382 (2d Cir. 2018) (affirming bankruptcy court's order denying arbitration of class action adversary proceeding alleging discharge injunction violations based on creditor's failure to update credit reports to show that debts were discharged in bankruptcy).

A tripartite of Ninth Circuit cases, *In re Thorpe Insulation Co.,* 671 F.3d 1011 (9th Cir. 2012), *In re Eber*, 687 F.3d 1123 (9th Cir. 2012), and *In re EPD Inv. Co.*, 821 F. 3d 1146 (9th Cir. 2016) "applying the 'inherent conflict' test in the bankruptcy context to core claims all concluded the bankruptcy court properly exercised its discretion to refuse to enforce an arbitration agreement." *In re Farmer*, 567 B.R. 895, 899–900 (Bankr. W.D. Wash. 2017), *aff'd,* No. C17-0764-JCC, 2017 WL 4619209 (W.D. Wash. Oct. 16, 2017), *vacated and remanded,* No. C17-0764-JCC, 2018 WL 3640398 (W.D. Wash. May 11, 2018). The result here should be no different.

When a creditor attempts to collect discharged debt, courts do not enforce arbitration agreements, holding arbitration would conflict with the Bankruptcy Code's purposes of giving the debtor a fresh start. *Chavez v. Get It Now, LLC*, No. 17-1490 (DWF/HB), 2018 WL 461130, at *3 (D. Minn. Jan. 16, 2018); *Harrier v. Verizon Wireless Pers. Commc'ns LP*, 903 F. Supp. 2d 1281, 1282 (M.D. Fla. 2012) (denying arbitration for claims arising from Verizon's attempt to collect discharged debt); *In re Jorge*, 568 B.R. 25, 33 (Bankr. N.D. Ohio 2017); *Jernstad v. Green Tree Servicing, LLC*, No. 11 C 7974, 2012 WL 8169889, at *1 (N.D. Ill. Aug. 2, 2012).

In *Chavez*, the court concluded that the arbitration agreement should not be enforced since it conflicted with the Bankruptcy Code. *Chavez* at *2. Citing the Ninth Circuit's opinion in *Eber*, "[t]o determine if Congress intended to override the FAA's policy favoring arbitration in a particular statute, courts must examine: (1) the text of the statute; (2) its legislative history; and (3) whether an inherent conflict between arbitration and the underlying purposes of the statute exist." *In re Eber*, 687 F.3d 1123, 1129 (9th Cir. 2012) (*citing Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226 (1987). The court and the parties in *Chavez* focused on the third factor by recognizing that courts "enforce arbitration agreements so long as the debtor's claims do not arise from the creditor's attempts to collect discharged debt." *Chavez* at *2. "This is the case because attempting to collect discharged debt elevates the creditor-debtor dispute and conflicts with the Bankruptcy's Code's purpose of giving debtors a fresh start." *Id.* (citation omitted). The court found the defendant was attempting to collect

discharged debt and for that reason it conflicted with the Bankruptcy Code's fresh start and denied the motion to compel arbitration. *Id.* at *3.

As Professor Robert M. Lawless[3] stated in an article titled "Arbitration in Bankruptcy – Discharge, the Easy Case"[4], "the [bankruptcy] discharge is inherently nonarbitrable. A bankruptcy petition initiates a process from which the discharge flows. A creditor can no more ask for arbitration of the discharge than it can ask for arbitration of the petition itself."   As set forth above, the Second Circuit held exactly that in a case called *Credit One v. Anderson*[5].   In its opinion, the court cited an amicus brief from former U.S. Bankruptcy Judge for the District of Nevada (2007-13) and member of the Bankruptcy Appellate Panel for the Ninth Circuit, Bruce Markell, along with Ralph Brubaker, and Robert M. Lawless. *Brief of Amici Curiae Professor Ralph Brubaker, Robert M. Lawless, and Bruce A. Markell in Support of Appellee ("Amicus Brief")* attached hereto as Exhibit "2".  The Amicus Brief sets forth that a discharge is enforced through a court injunction, which only the court has the authority to enforce and makes three main arguments to support this conclusion.  *Id.*  Those arguments are: 1.) History Demonstrates Congress Consciously Chose Injunctive Relief to Enforce the Bankruptcy

---

[3] Professor Lawless specializes in bankruptcy, consumer finance, and business law. He is a co-author for the ninth edition of *Secured Transactions: A Systems Approach*, a leading textbook on secured transactions. https://law.illinois.edu/faculty-research/faculty-profiles/robert-m-lawless/

[4] https://www.creditslips.org/creditslips/2019/02/arbitration-in-bankruptcy-discharge-the-easy-case.html

[5] On June 3, 2022, the United States Bankruptcy Court, Southern District of New York ruled that after the Court decides the specific amount of Plaintiff's reasonable fees and expenses and the size of the class certified herein; a damages class shall be certified under Fed.R.Civ.P. 23(b)(3)"…... *Anderson v. Credit One Bank, N.A. (In re Anderson)*, 641 B.R. 1 (Bankr. S.D.N.Y. 2022).

Discharge; 2.) There is No "Claim" Against Which the Arbitration Agreement Can Operate, Only Enforcement of an Existing Order; and 3.) The Discharge Injunction Is a Central Piece of the Bankruptcy Code and Inherently Conflicts with the FAA. *Id.*

Notwithstanding that Plaintiff disputes the validity of the promissory notes and that they are binding on her, *see infra*, the facts of this case compel denying Defendant's Motion. Here, like *Chavez, In re Anderson, Harrier, Jorge and Jernstad*, the facts alleged concern attempts by Navient to collect discharged debt. *Complaint* ECF No. 1, ¶31 (Following her bankruptcy discharge, Plaintiff received numerous communications in the form of debt collection letters and collection telephone calls from Navient attempting to collect on the private student loan debt that was discharged in her bankruptcy.); ¶33 (Navient demands that Plaintiff resolve her "delinquency" and pay $11,473.44 toward her discharged debt to avoid defaulting on the private student loans.); ¶34 (Navient also claimed her account is under review for litigation.)

Navient's Motion acknowledges the same, "Navient wrongfully 'attempt[ed] to collect on [her] private student loan debt'" and the claims "specifically relate" to "collection activity[.]" ECF No. 20, p.19. Therefore, Navient's Motion "elevates the creditor-debtor dispute and conflicts with the Bankruptcy's Codes purpose of giving debtors a fresh start" and should be swiftly denied. *Chavez* at *2.

> B. *Navient Failed to Prove the Existence of an Agreement to Arbitrate Between the Parties*

>> a. *Navient Cannot Enforce the Purported Agreement to Arbitrate Since Navient is not Sallie Mae Bank*

In addition to the fact that Navient cannot enforce the purported arbitration agreement due to the bankruptcy discharge, Navient cannot enforce the arbitration agreement because it is not a party or a successor in interest to any agreement with Sallie Mae Bank. The threshold question of whether an arbitration agreement exists "is simply a matter of contract between the parties." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Under the summary judgment standard, Navient bears the initial burden of proof of the existence of a valid enforceable agreement to arbitrate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Colorado law, a valid and enforceable contract "requires mutual assent to an exchange between competent parties for legal consideration." *French v. Centura Health Corp.*, 2022 CO 20, ¶ 26, 509 P.3d 443, 449. Navient has failed to carry its burden.

Assuming, arguendo, the Agreements in evidence are valid and enforceable, at best, Plaintiff assented to an agreement with Sallie Mae Bank. There is no evidence Navient is the "subsequent holder of th[e] note" a "parent, wholly or majority owned subsidiar[y] and affiliate[]" or a "successor[] and assign[]" of the Lender, Sallie Mae Bank. ECF No. 22-6, p.9. Navient, in fact, admits the only link is "through its corporate predecessors." ECF No. 22-1, ¶11. Ms. Box's declaration is silent as to how Navient "created, acquired, maintained, and preserved, if at all, the electronically created and electronically stored document, making [her] testimony insufficient to establish that the proffered document is what it purports to be." *Dillon v. BMO Harris Bank, N.A.*, 173 F. Supp. 3d 258, 264 (M.D.N.C. 2016). Accordingly, since it has not provided any

evidence of how it is related to Sallie Mae Bank, Navient has failed to meet its burden

that it could enforce an arbitration agreement.

> b. *Navient Fails to Prove How a Nonsignatory May Compel Arbitration*

Navient is not the Lender on Plaintiff's loan applications. ECF Nos. 22-2; 22-3;

22-4; 22-5; 22-6. Thus, Navient is not a signatory on any alleged agreement with

Plaintiff possibly containing an arbitration clause. "Generally, the contractual right to

compel arbitration 'may not be invoked by one who is not a party to the agreement and

does not otherwise possess the right to compel arbitration.'" *Kramer v. Toyota Motor*

*Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (*quoting Britton v. Co-op Banking Grp.,* 4

F.3d 742, 744 (9th Cir.1993). "The strong public policy in favor of arbitration does not

extend to those who are not parties to an arbitration agreement." *Comedy Club, Inc. v.*

*Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (citation omitted); *See E.E.O.C.*

*v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract

cannot bind a nonparty.")

Nevertheless, state contract law may "allow a contract to be enforced by or

against nonparties to the contract through "assumption, piercing the corporate veil, alter

ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel."

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (*quoting* 21 R. Lord,

Williston on Contracts § 57:19, p. 183 (4th ed.2001); *Mundi v. Union Sec. Life Ins. Co.*,

555 F.3d 1042, 1045 (9th Cir. 2009) ("General contract and agency principles apply in

determining    the    enforcement    of    an    arbitration    agreement    by    or    against

nonsignatories."). However, courts have cautioned that allowing a nonsignatory to invoke arbitration should occur only in "rare circumstances." *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002).

Navient fails to articulate how it, not Sallie Mae Bank, may enforce arbitration rights on an agreement which it was not a party under some contract theory. Nor does Navient make any effort to put forth evidence Navient acquired or assumed any rights of Sallie Mae Bank accruing from the application and promissory notes. Navient's brief simply begins with the assumption "Plaintiff entered into binding agreements to arbitrate disputes with Navient…" glossing over critical details. ECF No. 20, p.9.

Navient's evidence only shows it acquired Plaintiff's documents "through its corporate predecessors." ECF No. 22-1, ¶11. While the Ninth Circuit has endorsed successors-in-interest as having the ability to invoke arbitration, *Hart v. Charter Commc'ns, Inc.*, 814 F. App'x 211, 214 (9th Cir. 2020) (unpublished), under *Hart*, Navient's vague evidence alleging "corporate predecessors" is insufficient to establish the necessary transfer of all right, title and interest in the alleged applications and promissory notes.

For the failure to set forth any evidence of a valid and enforceable agreement between the parties, Navient's Motion should be summarily rejected. Moreover, the absence of evidence of a valid and enforceable agreement means Navient has thus waived argument on a critical disputed issue of fact. *See Booren v. AELP Securitization Tr. Series 2015-1*, No. 21-35323, 2022 WL 596876, at *1 (9th Cir. Feb. 28, 2022).

1
2

### c. The Issue of Whether There is Viable Arbitration Agreement Cannot be Delegated to the Arbitrator

3

4

Navient argues the threshold question of whether a valid and enforceable arbitration agreement exists between Plaintiff and Navient is the role of the arbitrator. ECF No. 20, pp.17-18. This argument should be dismissed.

5

6

7

In general, "gateway" issues, for example whether the parties are bound by an arbitration agreement, are for the Court to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). When a party challenges the validity of the agreement to arbitrate, the federal court must consider the challenge." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010). In the context of a delegation clause, "courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939 (1995) (cleaned up) (*citing AT&T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 649 (1986). Judge Breyer's unanimous opinion described this as a type of question where the "law reverses the presumption." *Id.* at 944-945. The question of who should decide arbitrability is one favoring the Court, not an arbitral forum. *Id.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The issue for the Court then is whether there is "clear and unmistakable evidence" Plaintiff agreed to arbitrate disputes related to her student loans. The answer to this question is a resounding no. As an initial matter, Plaintiff disputes she ever knowingly entered into an agreement to arbitrate. *Fennel Decl* ¶¶8-11. Second, Plaintiff disputes Navient has any right to compel arbitration where it was not a party to the alleged

24

25

26

27

28

agreement. Third, by this very opposition, Plaintiff contends she never assented to submit questions of arbitrability to the arbitrator.

Second and relatedly, Navient bases the issue of delegation on a single phrase. Claim "includes, without limitation, disputes concerning the validity, enforceability, arbitrability or scope of this Arbitration Agreement or this Note…" ECF No. 22-6, ¶ T.4. According to Navient, this language "expressly delegated" the gateway issues to the arbitrator. ECF No. 20, p.18. No case cited by Navient supports enforcement of this alleged delegation clause. *See* ECF No. 20, p.18.

To extrapolate "clear and unmistakable evidence" from this phrase, you have to link the very beginning of the arbitration clause, which states "[t]o the extent permitted under federal law, you and I agree that either party *may* elect to arbitrate – and require the other party to arbitrate – any Claim under the following terms and conditions[]" to the much later subsection. *Id.* at ¶ T (emphasis added). Navient is attempting to lump these provisions together to concoct a potentially binding delegation clause. Even then, the alleged agreement to arbitrate does not specifically delegate a gateway issue to the arbitrator, instead it provides for a discretionary election.

Navient's language is not so convincing as other language endorsed within the Ninth Circuit. For example, in *Momot*, the court held the following language clear and unmistakable:

> a) *Arbitration.* If a dispute arises out of or relates to this Agreement, the relationships that result from this Agreement, the breach of this Agreement *or the validity or application of any of the provisions of this Section 4,* and, if the dispute cannot be settled through negotiation, the

dispute shall be resolved exclusively by binding arbitration.

*Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (emphasis in original). In addition, the delegation clause at issue in *Rent-A-Ctr* mentioned above was substantially more compelling. The complete provision was not discussed in the Supreme Court but appeared in full in the Ninth Circuit's opinion.

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.

*Jackson v. Rent-A-Ctr. W., Inc.*, 581 F.3d 912, 914 (9th Cir. 2009), *rev'd*, 561 U.S. 63 (2010). *Rent-A-Ctr.* and *Momot*'s delegation clauses both contain the compelling word "shall" resulting in clear and unmistakable language. Navient's alleged delegation clause is optional and unenforceable. *See* ECF No. 22-6, ¶ T.

### C. Plaintiff Did Not Enter Into a "Knowing Agreement to Arbitrate"

Plaintiff cannot be compelled to arbitrate a dispute absent a "knowing agreement to arbitrate…." *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1304 (9th Cir. 1994). The initial funding application and promissory note between Plaintiff and Sallie Mae Bank did not contain an arbitration clause. *See* ECF No. 22-7. Each subsequent application executed by Plaintiff that allegedly attached a promissory note that did contain an arbitration clause, provided no notice the arbitration provision was added. The face of the applications themselves do not disclose or reference an arbitration provision. The extent of the notice given to Plaintiff is that it is "important you

thoroughly read the contract before you sign it", "do not sign this before you read the promissory note" and Plaintiff's signature means "I have read the Promissory Note." ECF Nos. 22-2, p.2; 22-3, p.2; 22-4, pp.2; 22-5, p.2; 22-6, p.2. The Ninth Circuit has found similar language insufficient to establish a knowing agreement to arbitrate. *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 761 (9th Cir. 1997).

Navient's lack of foundation in contract formation between Plaintiff and Sallie Mae Bank is evident here. Plaintiff recalls signing one loan application with a physical signature, the rest were all signed electronically. *Fennell Decl.* ¶7. Plaintiff would either sign, or click a few buttons, and go back to class. *Id.* She does not recall being presented with the promissory notes at time of signature, nor whether the promissory notes were available to her. *Id.* at ¶¶8-9. To be sure, no one in the financial aid office at the Art Institute of Colorado ever discussed arbitration with her. *Id.* at ¶¶10-11.

The promissory notes themselves do not contain any signature blocks or areas where Plaintiff might have initialed acceptance. *See* ECF Nos. 22-2; 22-3; 22-4; 22-5; 22-6; 22-7. Navient does not offer any evidence on how the promissory notes were presented or delivered to Plaintiff or how Plaintiff could have been aware she agreed to submit anything to arbitration. Plaintiff's signature on her application only asks her to "read" the promissory note. *See e.g.*, ECF No. 22-7. In essence, Navient's declaration is absent critical details on contract formation lacking evidence on how the arbitration agreements are even binding on Plaintiff to begin with. This is not surprising. Navient was not a party to the application or promissory notes and can offer no evidence other

1   than some documents that somehow came into its possession "through [] corporate

2   predecessors". *Box Decl* (ECF No. 22-1, p.3, ¶10-11).

3   <u>**Conclusion**</u>

4
5       For the foregoing reasons, Navient's Motion to Compel Arbitration should be

6   denied.

7

8   Dated: September 21, 2022

9

10  FREEDOM LAW FIRM

11   /s/ George Haines
12  George Haines, Esq.
     Gerardo Avalos, Esq.
13  8985 S. Eastern Ave., Suite 350
14  Las Vegas, Nevada 89123

15

16  MILBERG COLEMAN BRYSON PHILLIPS
    PLLC
17
    /s/Scott C. Harris (Admitted Pro Hac Vice)
18  Scott C. Harris, Esq.
    sharris@milberg.com
19  900 W. Morgan Street
    Raleigh, NC 27603
20  (919) 600-5003

21  /s/Gary M. Klinger (Admitted Pro Hac Vice)
    Gary M. Klinger, Esq.
22  gklinger@milberg.com
    227 W. Monroe Street, Suite 2100
23  Chicago, IL 60606
    (866) 252-0878
24

25  *Attorneys for Plaintiffs*

26

27

28

# Exhibit "1"

DocuSign Envelope ID: 81BAE8F4-92D3-4BD4-8E78-CCA06703DBF2

George Haines, Esq.
Nevada Bar No. 9411
**FREEDOM LAW FIRM**
8985 S. Eastern Ave., Suite 350
Las Vegas, NV 89123
Telephone: (702) 880-5554
Facsimile:  (702) 385-551
georgehaines@freedomlegalteam.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTINA FENNELL, individually and on behalf of all others similarly situated;<br><br>               Plaintiffs,<br><br>          v.<br><br>NAVIENT SOLUTIONS, LLC,<br><br>              Defendant. | Case No.: 2:22-cv-01013-CDS-NJK<br><br>**DECLARATION OF CHRISTINA FENNELL IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

I, Christina Fennell, declare under penalty of perjury, as provided for by the laws of the United States, pursuant to 28 U.S.C. § 1746, that the following statements are true:

1.    I am over the age of 18, not under any legal disabilities and the Plaintiff in the above-styled action.

DocuSign Envelope ID: 81BAE8F4-92D3-4BD4-8E78-CCA06703DBF2

2. I submit this Declaration in opposition of the Defendant's Motion to Compel Arbitration.

3. On or about July 2005, I enrolled in the Art Institute of Colorado ("AIC").

4. Throughout my tenure, I borrowed approximately $73,873 in private student loans from Sallie Mae Bank to attend AIC.

5. All my student loans were applied for through the financial aid office at AIC.

6. The financial aid office would frequently call me into the office from class stating I either needed to more money to attend or to let me know my private student loans were approved.

7. I only remember signing one application and the rest I signed electronically, with the click of a few buttons, and would go back to class.

8. I do not recall being presented with the promissory notes that are referred to in the Creative Education Student Loan applications before I signed them or at any time after.

9. I was never mailed or provided a hard copy of the signed student loan applications, or the promissory notes referred to therein.

10. No one in the financial aid office at the Art Institute of Colorado ever mentioned there was an arbitration clause in some of the student loan applications I signed.

11. No one in the financial aid office at the Art Institute of Colorado ever

1    discussed arbitration with me.

2        12.    I declare under penalty of perjury that the foregoing is true and correct.

3

4                         9/19/2022
     Executed on:_____.

5

6

7    By:_____
                Christina Fennell

8              Christina Fennell

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit "2"

# No. 16-2496

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

In re: Orrin S. Anderson, AKA Orrin S. Anderson,
AKA Orinn Scott Anderson,
*Debtor.*

Orrin S. Anderson, on behalf of himself and all others similarly situated,
AKA Orinn Scott Anderson,
*Plaintiff-Appellee*
— v. —

CREDIT ONE BANK, N.A.,
*Defendant-Appellant*

On Appeal from the United States District Court for the
Southern District of New York, No. 15-c-4227

**BRIEF OF *AMICI CURIAE* PROFESSORS RALPH BRUBAKER,
ROBERT M. LAWLESS, AND BRUCE A. MARKELL
IN SUPPORT OF APPELLEE**

TARA A. TWOMEY
*COUNSEL FOR AMICI CURIAE*
NATIONAL CONSUMER BANKRUPTCY
RIGHTS CENTER
1501 The Alameda, Suite 200
San Jose, CA 95126
tara.twomey@comcast.net
(831) 229-0256

February 27, 2017

Electronic copy available at: https://ssrn.com/abstract=2925494

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

CONSENT ....................................................................................... 1

CERTIFICATION OF AUTHORSHIP ................................................. 1

STATEMENT OF INTEREST ............................................................. 1

SUMMARY OF ARGUMENT ............................................................ 3

ARGUMENT .................................................................................. 5

    I.     History Demonstrates Congress Consciously Chose Injunctive
          Relief to Enforce the Bankruptcy Discharge ...................................... 5

    II.    There Is No "Claim" Against Which the Arbitration Agreement
          Can Operate, Only Enforcement of an Existing Order. ..................... 12

    III.   The Discharge Injunction Is a Central Piece of the Bankruptcy
          Code and Inherently Conflicts with the FAA ................................... 18

CONCLUSION ............................................................................... 20

i

Electronic copy available at: https://ssrn.com/abstract=2925494

# TABLE OF AUTHORITIES

## Cases

*Alderwoods Group, Inc. v. Garcia*,
    682 F.3d 958 (11th Cir. 2012) ........................................................ 16, 22

*Bessette v. Avco Fin. Servs.*,
    230 F.3d 439 (1st Cir. 2009) ........................................................ 16, 22

*Cox v. Zale Delaware, Inc.*,
    239 F.3d 910 (7th Cir. 2001) ............................................................. 22

*Exec. Bens. Ins. Agency v. Arkison*,
    134 S. Ct. 2165 (2014) ..................................................................... 13

*In re Havens*,
    272 F. 975 (2d. Cir. 1921) ................................................................. 7

*Local Loan Co. v. Hunt*,
    292 U.S. 234 (1934) ................................................................. passim

*MBNA Am. Bank v. Hill*,
    436 F.3d 104 (2d Cir. 2006) ......................................................... 3, 13

*McComb v. Jacksonville Paper Co.*,
    336 U.S. 187 (1949) ......................................................................... 16

*In re Nassoko*,
    405 B.R. 515 (Bankr. S.D.N.Y. 2009) .............................................. 15

*In re National Gypsum Co.*,
    118 F.3d 1056 (5th Cir. 1997) .......................................................... 17

*Pertuso v. Ford Motor Credit Co.*,
    233 F.3d 417 (6th Cir. 2000) ............................................................ 22

*Powell v. Ward*,
    643 F.2d 924 (2d Cir. 1981) ............................................................. 16

Electronic copy available at: https://ssrn.com/abstract=2925494

*In re Scheffler,*
    68 F.2d 902 (2d Cir. 1934) ............................................................. 7

*Shearson/Am. Express, Inc. v. McMahon,*
    482 U.S. 220 (1987) .................................................................... 4

*In re Standing Order of Reference Re: Title 11,*
    12 Misc. 32 (S.D.N.Y. Jan. 31, 2012) ......................................... 13

*Stern v. Marshall,*
    564 U.S. 462 (2011) .................................................................. 13

*Walls v. Wells Fargo Bank,*
    276 F.3d 502 (9th Cir. 2002) ........................................... 15, 16, 22

*Zavelo v. Reeves,*
    227 U.S. 625 (1913) .................................................................... 5

**U.S. Constitution**

U.S. Const., art. I, § 8 ........................................................................ 12

U.S. Const., art. I, § 10 ...................................................................... 12

**Federal Statutes**

11 U.S.C. § 101 ................................................................................ 10

11 U.S.C. § 101(13) .......................................................................... 14

11 U.S.C. § 105 .......................................................................... 15, 16

11 U.S.C. § 524 ........................................................................ passim

11 U.S.C. § 524(a) ............................................................................ 10

11 U.S.C. § 524(a)(2) ................................................................. passim

11 U.S.C. § 727(a) ...................................................................... 5, 14

iii

Electronic copy available at: https://ssrn.com/abstract=2925494

11 U.S.C. § 1141(d) ................................................................. 5

11 U.S.C. § 1228(a) ................................................................. 6

11 U.S.C. § 1328(a) ................................................................. 6

28 U.S.C. § 151 ..................................................................... 13

28 U.S.C. § 157 ..................................................................... 13

28 U.S.C. § 157(c) .................................................................. 13

28 U.S.C. § 1331 ................................................................... 22

28 U.S.C. § 1334 ................................................................... 13

28 U.S.C. § 1334(a) ............................................................... 13

28 U.S.C. § 1334(b) ............................................................... 13

**Federal Rules**

Fed. R. Bankr. P. 2004 ............................................................ 19

Fed. R. Bankr. P. 4004(f) ........................................................ 21

Fed. R. Bankr. P. 7001 ............................................................ 21

Fed. R. Bankr. P. 9014 ............................................................ 21

Fed. R. Bankr. P. 9022 ............................................................ 21

**Legislative History**

Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 ......... 10, 14

H.R. Rep. No. 91-1502 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4156 ............ 11

Pub. L. No. 91-467, 84 Stat. 990 (1970) ............................................ 9

Electronic copy available at: https://ssrn.com/abstract=2925494

S. Rep. No. 91-1173 (1970)............................................................................. 11

Staff of the Subcomm. on Civil & Constitutional Rights of the House Comm. on
   the Judiciary, 95th Cong., 1st Sess., Table of Derivation of H.R. 8200
   (Comm. Print No. 6, 1977, and available at 1977 WL 201780).............. 11

**Other Authorities**

Ralph Brubaker, *Of State Sovereign Immunity and Prospective Remedies: The
   Bankruptcy Discharge as Statutory* Ex Parte Young *Relief*, 76 Am. Bankr.
   L.J. 461 (2002) ............................................................................. 5, 10, 14

Ralph Brubaker, *On the Nature of Federal Bankruptcy Jurisdiction: A General
   Statutory and Constitutional Theory*, 41 Wm. & Mary L. Rev. 743 (2000)
   ............................................................................................................ 14

COLLIER ON BANKRUPTCY ¶ 105.02[1] (Alan N. Resnick & Henry J. Sommers,
   eds., 16th ed.)................................................................................. 16

Vern C. Countryman, *The New Dischargeability Law*, 45 Am. Bankr. L.J. 1 (1971)
   .............................................................................................................. 9

Official Bankruptcy Forms 318, 3180F, 3180R1, 3180W ................................. 6

David A. Skeel, Jr., *Vern Countryman and the Path of Progressive (and Populist)
   Bankruptcy Scholarship*, 113 Harv. L. Rev. 1075, 1075 (2000).............. 9

Charles Jordan Tabb, *The Historical Evolution of the Bankruptcy Discharge*, 65
   Am. Bankr. L.J. 325 (1991)....................................................................... 5

v

Electronic copy available at: https://ssrn.com/abstract=2925494

## CONSENT

This *amici curiae* brief is being filed with the consent of the parties.

## CERTIFICATION OF AUTHORSHIP

Pursuant to Fed. R. App. P. 29(c)(5) and Local Rule 29.1(b), *amici curiae* affirms that no counsel for a party authored this brief in whole or in part, and no person or entity other than amici and their counsel made any monetary contribution toward the preparation or submission of this brief.

## INTEREST OF *AMICI CURIAE*

Amici curiae ("Amici") are three leading scholars of bankruptcy, commercial, and business law who have been teaching, researching, and writing about bankruptcy law for decades. They believe the issue presented to the court is of fundamental importance to the bankruptcy system and seek to provide the court with a fuller background about the development of the law at stake in this case.

Ralph Brubaker is the Carl L. Vacketta Professor of Law at the University of Illinois. He is the co-author of a bankruptcy law textbook as well as the editor-in-chief of West's *Bankruptcy Law Letter*. He is an elected member of the American Law Institute and a fellow of the American College of Bankruptcy, for which he currently serves as scholar-in-residence.

1

Electronic copy available at: https://ssrn.com/abstract=2925494

Robert M. Lawless is the Max L. Rowe Professor of Law at the University of Illinois. He is the co-author of a textbook on the law of secured transactions. He is also an elected member of the American Law Institute, a conferee of the National Bankruptcy Conference, and a fellow of the American College of Bankruptcy.

Bruce A. Markell is a former bankruptcy judge and currently Professor of Bankruptcy Law and Practice at Northwestern University. He is the co-author of four textbooks on bankruptcy, contracts, secured transactions, and securitization. He is a member of the board of editors of *Collier on Bankruptcy*, an elected member of the American Law Institute, a conferee of the National Bankruptcy Conference, and a fellow of the American College of Bankruptcy.

2

Electronic copy available at: https://ssrn.com/abstract=2925494

## SUMMARY OF ARGUMENT

This case presents a simple issue. Can a predispute arbitration agreement strip a court of the inherent power of contempt to enforce its own orders? The obvious answer is "no."

Congress has directed that a bankruptcy discharge "operates as an injunction." 11 U.S.C. § 524(a)(2). Casting section 524's remedy as injunctive relief was not an accident of phrasing. Rather, Congress deliberately chose to codify Supreme Court precedent and lower-court decisions authorizing injunctions to vindicate the fresh start given by federal bankruptcy law.

Courts enforce injunctions by contempt citations. Holding someone in contempt of court is not a new cause of action or a new claim but the enforcement of an existing court order. An arbitration agreement between private parties cannot strip the court of this inherent power.

This is hardly the first case to raise an issue about the arbitrability of matters governed by another federal statute. When that occurs, "[t]he party opposing arbitration has the burden to show Congress intended to preclude arbitration of the statutory rights at issue. Congressional intent can be deduced from the statute's text, legislative history, or from an 'inherent conflict' between arbitration and the statute's underlying purposes." *MBNA Am. Bank v. Hill*, 436 F.3d 104, 108 (2d

3

Electronic copy available at: https://ssrn.com/abstract=2925494

Cir. 2006) (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)).

Here, the burden is handily met. Section 524's textual direction for an "injunction" along with section 524's history demonstrate a congressional intent to preclude arbitration of discharge violations. Indeed, section 524 does not create any new statutory rights that might be subject to arbitration. Rather, section 524 provides for injunctive enforcement of rights already awarded a debtor by decree of a federal court. There is nothing in section 524 against which an arbitration agreement can operate. Section 524 itself provides that its injunctive relief operates "whether or not discharge . . . is waived," 11 U.S.C. § 524(a)(2), further indicating the parties cannot strip the court of the power to enforce the discharge such as by a preemptive arbitration agreement.

There is also an inherent conflict between the bankruptcy discharge, a central piece of the Bankruptcy Code, and arbitration. Anderson's allegations, if true, raise serious questions about effective compliance with a lawful order of a federal court. Turning enforcement of this court order over to a nonpublic, private arbitrator would deprive a court of the ability to develop an evidentiary record about the intent behind and the extent of any violation of its own orders. Wherever the line is to be drawn for other conflicts between the Bankruptcy Code and the

4

Electronic copy available at: https://ssrn.com/abstract=2925494

Federal Arbitration Act, the statutory discharge injunction falls well over the non-arbitration side of the line.

## ARGUMENT

**I.    History Demonstrates Congress Consciously Chose Injunctive Relief to Enforce the Bankruptcy Discharge.**[1]

The issue on appeal revolves around the enforcement of an injunction. This case has been framed with the premise that section 524(a)(2)'s use of the word "injunction" is a historical accident. It is not. Congress deliberately chose to vest the federal court presiding over a bankruptcy case with injunctive power to enforce the bankruptcy debtor's discharge. Congress did so precisely to give a bankruptcy debtor access to a federal court's power to enforce its own orders. In understanding why Congress codified the discharge injunction, it also is important to keep in mind the critical distinction between the bankruptcy discharge order and the discharge injunction, a distinction also often lost in these proceedings.

The bankruptcy discharge order is a federal decree that the debtor no longer has legal liability for a debt. *See, e.g., Zavelo v. Reeves*, 227 U.S. 625, 629 (1913). The Bankruptcy Code directs the court to grant a discharge if the debtor satisfies the conditions of the relevant bankruptcy chapter. 11 U.S.C. §§ 727(a), 1141(d),

---

[1]    The history discussed in this section draws heavily from and summarizes the more detailed discussions in Charles Jordan Tabb, *The Historical Evolution of the Bankruptcy Discharge*, 65 Am. Bankr. L.J. 325 (1991) and Ralph Brubaker, *Of State Sovereign Immunity and Prospective Remedies: The Bankruptcy Discharge as Statutory* Ex Parte Young *Relief*, 76 Am. Bankr. L.J. 461, 511-28 (2002).

Electronic copy available at: https://ssrn.com/abstract=2925494

1228(a), 1328(a). The discharge order is a basic declaratory order, stating in its entirety, "IT IS ORDERED: A discharge under 11 U.S.C. § . . . is granted to," followed by the name of the debtor, the date, and the judge's signature. This simple order is reflected in mandatory, official forms. *See* Official Bankruptcy Forms 318, 3180F, 3180R1, 3180W.

Section 524 of the Bankruptcy Code then specifies the effects of that federal order. At issue in this case is section 524(a)(2), "A discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." Thus, section 524 provides for injunctive relief to enforce the federal bankruptcy discharge. The discharge decree and the discharge injunction are procedurally distinct concepts.

The Bankruptcy Acts of 1800, 1841, and 1867 all provided for a bankruptcy discharge. The substantive contours of the discharge varied – for example, the 1800 law provided a discharge only for "merchants" – but drawing on their English antecedents these laws all had the same procedural features. The federal court with jurisdiction over the bankruptcy case issued a discharge decree, but the bankruptcy law itself provided no enforcement mechanism in the federal court. Instead, the bankrupt debtor would plead the discharge as an affirmative defense in any later

6

Electronic copy available at: https://ssrn.com/abstract=2925494

proceedings to enforce a debt discharged in the bankruptcy case. If a dispute arose as to whether the bankruptcy case had discharged a particular debt, it would be resolved in this later collateral proceeding and by a tribunal other than the federal court that issued the discharge decree.

Our nation's first permanent bankruptcy law, the Bankruptcy Act of 1898, retained these procedural features. The law specified that a court could deny a discharge for certain conduct, such as hiding assets. The federal court with jurisdiction over the bankruptcy case might, for example, stay a state-court debt-collection proceeding until the federal court determined whether the debtor was eligible for a discharge. Once the federal court determined the debtor was eligible, it granted a discharge. After that, "[t]he correct procedure is to interpose the discharge as a defense in the state proceeding." *In re Scheffler*, 68 F.2d 902 (2d Cir. 1934); *see also In re Havens*, 272 F. 975 (2d. Cir. 1921).

These procedures began to change with *Local Loan Co. v. Hunt*, 292 U.S. 234 (1934), which is the fount of the discharge injunction now codified in section 524. In *Local Loan*, a small-loan company had taken a wage assignment from debtor Hunt. Hunt later filed bankruptcy and received a discharge. Under the case law of Hunt's native Illinois, the wage assignment was a lien on his future wages. The loan company sued Hunt's employer in state court to enforce the wage assignment claiming the bankruptcy could not affect its lien. Hunt then asked the

7

Electronic copy available at: https://ssrn.com/abstract=2925494

federal court with jurisdiction over his bankruptcy case to enjoin the state-court action.

The U.S. Supreme Court ruled that treating the wage assignment as a lien was inconsistent with the purposes of the federal bankruptcy law, *id.* at 244-45. The Court further ruled that the federal court with jurisdiction over the bankruptcy, like all federal courts, had the power to entertain the request for an injunction "to secure or preserve the fruits and advantages of a judgment or decree rendered therein." *Id.* at 239. The injunction would vindicate an important policy of the federal bankruptcy fresh start, otherwise thwarted by Illinois's law regarding the nature of the wage assignment. The power to issue a discharge injunction flowed directly from the power to issue the discharge decree itself. "The jurisdiction of the court follows that of the original cause." *Id.* By definition, then, no other tribunal had the power to issue the injunction.

After *Local Loan*, the case law surrounding enforcement of the discharge devolved into a morass. The federal courts varied widely on what constituted "unusual circumstances" sufficient to justify a *Local Loan* injunction. Some courts granted injunctions freely. Others found unusual circumstances in the effects of wage assignments or garnishments. "But in other jurisdictions, and particularly in the Second Circuit, the exception from the usual practice created by *Hunt* was regarded as an 'exceedingly narrow' one – so narrow, in fact, that another case

8

Electronic copy available at: https://ssrn.com/abstract=2925494

presenting 'unusual circumstances' seemed never to arise." Vern C. Countryman, *The New Dischargeability Law*, 45 Am. Bankr. L.J. 1, 4-5 (1971).[2]

In the absence of an injunction, debtors who neglected to assert the discharge in a later state-law action might find the doctrine of res judicata blocked any attempt to return to federal court for an injunction. *Id.* at 5-6. With *Local Loan*'s authorization for federal courts to enjoin collection of discharged debts came the concomitant obligation sometimes to decide which debts had been discharged. Thus, federal courts and state courts might engage in protracted jurisdictional dances about who could decide that a particular debt had been incurred fraudulently and was therefore not covered by the discharge. *Id.* at 6-8. As the case law developed, aggressive creditors even began asking the federal court hearing the bankruptcy case to issue prophylactic determinations about which particular debts were covered by the discharge. *Id.* at 8-10.

To clean up this case-law quagmire, in 1970 Congress enacted "the dischargeability amendments" to the bankruptcy law. Pub. L. No. 91-467, 84 Stat. 990 (1970). Part of these amendments was a new section 14f for the Bankruptcy Act of 1898. This new section had two components. First, Congress provided that

---

[2] Professor Countryman was "a towering figure in bankruptcy" who played a prominent role in the drafting of the 1970 law that is a direct precursor to section 524. David A. Skeel, Jr., *Vern Countryman and the Path of Progressive (and Populist) Bankruptcy Scholarship*, 113 Harv. L. Rev. 1075, 1075, 1109-10 (2000). His explanation of that 1970 law is thus particularly helpful for understanding the reasons for its passage and its intended effect.

9

Electronic copy available at: https://ssrn.com/abstract=2925494

all judgments obtained on a discharged debt were null and void. *Id.* § 3, 84 Stat. at 991. The second component was a codification of the *Local Loan* injunction declaring that "an order of discharge shall enjoin all creditors whose debts are discharged from thereafter instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt." *Id.* By enacting the 1970 law, "[i]n effect . . . Congress made a determination that a threat of irreparable injury to debtors' federal discharge rights sufficient to warrant injunctive relief of the sort authorized in *Local Loan* existed in *all* cases with respect to *all* discharged debts." Ralph Brubaker, *Of State Sovereign Immunity and Prospective Remedies: The Bankruptcy Discharge as Statutory* Ex parte Young *Relief*, 76 Am. Bankr. L.J. 461, 524-25 (2002).

Just eight years later, Congress rewrote the bankruptcy laws and gave us what is today's Bankruptcy Code. *See* Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549. The first paragraph of what is now section 524 provides that all judgments obtained on discharged debts were null and void. The second paragraph, at issue in this appeal, states that the discharge shall "operate as an injunction" against creditor collection efforts. *Id.* § 101, 92 Stat. at 2592-93.[3] The provenance of section 524 in the 1970 amendments and, in turn, in the injunctions

---

[3] The 1978 law also added a new, third paragraph to section 524(a) to clarify issues that had arisen in regard to community property where only one spouse filed bankruptcy.

Electronic copy available at: https://ssrn.com/abstract=2925494

authorized by *Local Loan* could not be more patent. *See also* Staff of the Subcomm. on Civil & Constitutional Rights of the House Comm. on the Judiciary, 95th Cong., 1st Sess., Table of Derivation of H.R. 8200 (Comm. Print No. 6, 1977, and available at 1977 WL 201780) (identifying § 14f(2) of the Bankruptcy Act of 1898 as the origin of § 524(a)(2)); S. Rep. No. 91-1173, at 9 (1970) (discussing the statutory discharge injunction to be codified at 1898 Act § 14f, incorporating by reference an explanatory memorandum of the National Bankruptcy Conference, and stating that such power "presently resides in the bankruptcy court by virtue of the decision of the Supreme Court in *Local Loan v. Hunt*"); H.R. Rep. No. 91-1502, at 8 (1970) (same), *reprinted in* 1970 U.S.C.C.A.N. 4156, 4163.

It is difficult to imagine how Congress could have been clearer that section 524(a)(2) has actual injunctive force. A federal court decree of discharge triggers the injunction, the effects of which then ineluctably follow from the Supreme Court precedent that first authorized the injunction. Congressional use of the word "injunction" was not meant as a metaphor but was intended to give a bankrupt debtor the enforcement powers of the federal court that had granted the discharge. Section 524 is not "injunction-like"; it is an injunction. Congress codified *Local Loan*'s injunctive relief to ensure debtors received the full effect of these enforcement powers. Debtors who do not have the wherewithal to assert the bankruptcy discharge as a defense in collateral creditor collection actions now get

11

Electronic copy available at: https://ssrn.com/abstract=2925494

the injunctive protection from the federal court automatically. It is inconceivable that, in codifying the *Local Loan* injunction, Congress somehow intended to shrink the authority of the federal courts to enforce the discharge.

## II. There Is No "Claim" Against Which the Arbitration Agreement Can Operate, Only Enforcement of an Existing Order.

As its history demonstrates, the discharge injunction is not a "claim" subject to arbitration. This point should not be confused with a question of contract interpretation about the scope of any particular arbitration clause. Rather, violations of the discharge injunction are inherently non-arbitrable. The discharge injunction vindicates a federal right that a federal court already has awarded the debtor, the bankruptcy discharge.

Only Congress can enact a bankruptcy law that provides for a discharge of indebtedness. The Constitution empowers Congress to enact "uniform Laws on the subject of Bankruptcies," U.S. Const., art. I, § 8, while it simultaneously prohibits states from "impairing the Obligation of Contracts," *id.* § 10. Because of the Contract Clause and the preemptive effect of the uniform federal bankruptcy discharge in force for over 115 years, states cannot pass laws that discharge debts. The plenary power to provide for a discharge of indebtedness lies solely with Congress.

Electronic copy available at: https://ssrn.com/abstract=2925494

Congress has exercised this power by enacting the Bankruptcy Code at title 11 of the United States Code and giving the federal district courts "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). Congress also has given the federal district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." *Id.* § 1334(b).[4]

As explained in section I of the brief, the Bankruptcy Code directs the federal court with jurisdiction over the bankruptcy case to issue the bankruptcy discharge upon finding the debtor has met certain conditions. The discharge is

---

[4]  Congress has granted the federal district courts jurisdiction over bankruptcy matters under 28 U.S.C. § 1334. The federal district courts then may refer that jurisdiction to the bankruptcy judges in the district, *id.* § 157, which act as "a unit of the district court," *id.* § 151. All federal district courts have standing orders to refer all bankruptcy cases and proceedings to their bankruptcy court units as occurred in Anderson's case. *See In re Standing Order of Reference Re: Title 11*, 12 Misc. 32 (S.D.N.Y. Jan. 31, 2012). There are constitutional and statutory limits on the non-Article III bankruptcy courts' ability to render final orders and judgments in certain matters. *E.g.*, *Stern v. Marshall*, 564 U.S. 462 (2011); 28 U.S.C. § 157(c). Nonetheless, section 157 authorizes reference of the entirety of a district court's federal bankruptcy jurisdiction (including matters within its exclusive jurisdiction) to its bankruptcy court, and that statutory referral "does not implicate the constitutional defect identified by *Stern*." *Exec. Bens. Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2170 (2014).

The court's decision in *MBNA Am. Bank v. Hill*, 436 F.3d 104, 110 (2d Cir. 2006), appears, at least in part, to rest upon a misperception about the interaction between sections 157 and 1334. That a matter is within exclusive federal bankruptcy jurisdiction does not prevent referral of that matter to the bankruptcy court. That a matter can be referred to the bankruptcy court (and, thus, litigated and decided by either the district court or its bankruptcy court unit) is wholly unrelated to the exclusive or nonexclusive nature of the court's (the district court and its bankruptcy court unit) bankruptcy jurisdiction over the matter.

13

Electronic copy available at: https://ssrn.com/abstract=2925494

relief requested by the filing of the bankruptcy petition commencing the bankruptcy "case." Arguably, the discharge itself is an exercise of jurisdiction over the "case under title 11" and thus within the court's exclusive jurisdiction. Brubaker, 76 Am. Bankr. L.J. at 511. The only other possibility is that the discharge is a "civil proceeding arising under title 11" (although it would be an odd phrasing to call an automatically issuing decree a "proceeding").

The statute nominally designates a federal court's jurisdiction over a "civil proceeding arising under title 11" as "original but not exclusive." In regard to the discharge, however, the distinction between "case" jurisdiction versus "proceeding" jurisdiction is a distinction without a difference. *See* Ralph Brubaker, *On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory*, 41 Wm. & Mary L. Rev. 743, 837 (2000) ("[A]s a jurisdictional unit, a bankruptcy 'case' is an invention of the drafters of the 1978 Reform Act."). Only the federal court with jurisdiction over the bankruptcy can issue a discharge decree. A bankruptcy debtor cannot walk into another tribunal and file an action seeking a discharge order based on a bankruptcy case filed in federal court. The discharge order is issued by "[t]he court" presiding over the bankruptcy case to the "debtor," *e.g.* 11 U.S.C. § 727(a), who is the "person . . . concerning which a case under this title has been commenced," *id.* § 101(13). The only way to get a discharge order is to be a "debtor," which requires commencing a

14

Electronic copy available at: https://ssrn.com/abstract=2925494

bankruptcy case in federal court. A bankruptcy discharge is a "decree of a federal court of bankruptcy entered in the exercise of a jurisdiction essentially *federal* and *exclusive* in character." *Local Loan Co.*, 292 U.S. at 244 (emphasis added).

In filing his bankruptcy petition, Anderson commenced a procedure – a bankruptcy case – in the federal court from which the discharge would issue. Neither Anderson or any of his creditors could force arbitration of the bankruptcy case. An arbitrator cannot issue a bankruptcy discharge. For that matter, no one can issue a bankruptcy discharge other than the federal court exercising jurisdiction over a particular debtor's bankruptcy.

Anderson now simply asks the federal court that issued his discharge to enforce it. Before 1970, Anderson could have requested an injunction from that court, but section 524 now obviates the need to do so. An injunction is already in place. The remedy to enforce an injunction is a contempt citation. *Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002) (For a violation of the discharge injunction, "contempt is the appropriate remedy and no further remedy is necessary."); *In re Nassoko*, 405 B.R. 515, 520 (Bankr. S.D.N.Y. 2009) ("There is no serious question that a violation of the discharge provided in § 524(a)(2) is

Electronic copy available at: https://ssrn.com/abstract=2925494

punishable by contempt.").[5] "A court has the inherent power to hold a party in civil contempt in order 'to enforce compliance with an order of the court or to compensate for losses or damages.'" *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981) (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)). The parties, whether through a predispute arbitration agreement or any other agreement, cannot strip a court of an inherent power and certainly not the inherent power to enforce its own orders.

Put plainly, the bankruptcy discharge is a federally created right from "soup to nuts." Congress has created a process that leads to a decree of discharge, placed that process under the exclusive jurisdiction of the federal court presiding over the bankruptcy case, and provided for enforcement through the injunctive and

---

[5]    Citing the same cases as above, Credit One states that violations of the discharge injunction are enforced through section 105 of the Bankruptcy Code. Appellant's Brief p. 28. This is an odd position for Credit One to adopt as it seems to concede that Anderson has a private right of action for a violation of the discharge injunction. *See Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2009). Moreover, Credit One quotes *Walls* as saying "a bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction," Appellant's Brief at pp. 28-29, without noting that *Walls* was summarizing the holding in a different case, *Bessette*, on its way to rejecting it. 276 F.3d at 503.

Section 105 may provide additional express statutory authority for non-Article III bankruptcy judges to issue contempt citations. *See* COLLIER ON BANKRUPTCY ¶ 105.02[1] (Alan N. Resnick & Henry J. Sommers, eds., 16th ed.). The jurisdictional scheme that allows referral of bankruptcy matters to the bankruptcy courts is explained *supra* note 5. Whether a federal bankruptcy court, as opposed to a federal district court exercising bankruptcy jurisdiction, would have inherent contempt powers in the absence of section 105 may be an interesting legal question but is not relevant to this appeal.

Electronic copy available at: https://ssrn.com/abstract=2925494

contempt powers of that federal court. There is no role for an arbitrator or, for that matter, any other tribunal to play. *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958 (11th Cir. 2012) (holding a Florida bankruptcy court could not enforce a discharge entered by a Delaware bankruptcy court).

The only appellate case to consider the arbitrability of a bankruptcy discharge upheld the lower courts' decisions not to send the matter to arbitration. *In re National Gypsum Co.*, 118 F.3d 1056 (5th Cir. 1997). Although the facts are complex, the question in *National Gypsum* revolved around the interpretation of a confirmation order in a large chapter 11 reorganization. A creditor demanded repayment of a debt the debtor claimed that the chapter 11 proceeding had discharged. The *National Gypsum* court distinguished "between those actions derived from the debtor and those created by the Bankruptcy Code" to explain "the consistent reluctance of courts to permit arbitration of actions brought to adjudicate *bankruptcy rights*." 118 F.3d at 1068.

Credit One takes issue with the conclusion *National Gypsum* draws from this principle, Appellant's Brief pp. 36-37 n.12, namely that a bankruptcy court "retains significant discretion" to deny arbitration when the debtor is asserting rights entirely conferred by the Bankruptcy Code. 118 F.3d at 1068. Amici agree that *National Gypsum*'s blanket conclusion about the general non-arbitrability of all rights created by the Bankruptcy Code likely goes too far (and is probably best

17

Electronic copy available at: https://ssrn.com/abstract=2925494

characterized as dicta). But, *National Gypsum*'s invocation of the idea that the discharge is such a non-arbitrable "bankruptcy right" alludes to the points advanced by Amici. Congress has put some matters within the exclusive province of the federal court with jurisdiction over the bankruptcy case. The discharge injunction is one of them.

## III. The Discharge Injunction Is a Central Piece of the Bankruptcy Code and Inherently Conflicts with the FAA.

This case ultimately comes down to two congressional directives that point in different directions. It would be of great help to the courts if, every time Congress passed a new law, it went through and specified how the new statute interacted with every other part of the U.S. Code. Of course, that does not happen, nor do we want it to happen lest the legislative process become even more unwieldy than it already is. Courts often have to reconcile conflicting directives from the legislature.

The question always is legislative intent. In the case of the bankruptcy discharge and the discharge injunction, there is an entire statutory edifice placing enforcement within the sole power of the federal court hearing the bankruptcy case. Short of an explicit statutory directive, it is difficult to imagine a clearer indication of congressional intent.

18

Electronic copy available at: https://ssrn.com/abstract=2925494

The principal briefs have fully discussed the analytical framework for arbitrability of claims in the federal court. The text and history of the discharge injunction – indeed the whole statutory scheme – deduce congressional intent to preclude enforcement of the FAA. This text and history also provide evidence of the "inherent conflict" between the purposes of the discharge injunction and the FAA.

The specific allegations raised by Anderson further bear witness to the important bankruptcy purposes served by the discharge injunction. Anderson alleges that Credit One willfully maintained a policy in regard to credit reporting that would have the practical effect of forcing debtors to forgo the relief granted by federal law and pay debts discharged in a bankruptcy case. Amended Class Action Adversary Complaint ¶ 13 (JA 385). The allegations go to the heart of the purpose of the federal bankruptcy laws. The seriousness of the allegations is evidenced by the United States Trustee's request for a subpoena duces tecum and examination under Federal Rule of Bankruptcy Procedure 2004. (JA 201, 257, 362). Anderson's assertions about Credit One's credit reporting practices are not allegations about mere technicalities.

If Anderson's allegations are true, Credit One may be found to have willfully flouted a federal court order. Having that order enforced by the court that issued the order is not merely more efficient, it may also be necessary to vindicate

19

Electronic copy available at: https://ssrn.com/abstract=2925494

the court's authority by way of criminal contempt. Allowing the parties' boilerplate arbitration agreement to relegate the inquiry to a private arbitrator eviscerates the power of the court to enforce its injunction. In a contempt proceeding, the court could develop an evidentiary record on matters such as (1) whether Credit One violated its order, (2) whether any violations were unintentional or willful, (3) the extent of any violations, and (4) the ability to fashion an appropriate remedy including the possibility of awarding attorneys' fees. It is beside the point that an arbitrator also may be professionally competent to do these things, Appellant's Brief at pp. 45-47, or may do these things more or less expensively or expeditiously than the court, *id.* at pp. 38-44. An arbitrator is not the court. Sending the case to an arbitrator very much undermines the power of the court to enforce its own orders.

## CONCLUSION

Amici have filed this brief because it raises important issues for the bankruptcy system. According to the Administrative Office of U.S. Courts, there were over 790,000 bankruptcy cases filed in 2016 alone. Almost every one of these cases may be routine, but at the center of these cases is the discharge order and discharge injunction. Together, they give each of the debtors in these bankruptcy cases the fresh start for the "honest but unfortunate debtor" that holds out the hope

20

Electronic copy available at: https://ssrn.com/abstract=2925494

of a better and more productive life. *Local Loan Co.*, 292 U.S. at 244. This fresh start would be jeopardized if the federal courts could be stripped of their inherent powers to enforce the discharge injunction by predispute arbitration agreements, which are ubiquitous in the consumer financial industry.

Anderson's complaint raises issues that the parties may develop if the case is sent back to the lower courts:

- Can violations of the discharge injunction be prosecuted on behalf of a class of debtors?

- Do federal courts have the power to enforce the discharge injunctions entered in bankruptcy cases from other districts where the debtor has not registered that discharge order with the court pursuant to Fed. R. Bankr. P. 4004(f)?

- What remedies do bankruptcy courts, as opposed to district courts, have the constitutional authority to impose for contempt?

- Can violations of the discharge injunction be prosecuted as an adversary proceeding under Fed. R. Bankr. P. 7001? *Cf.* Fed. R. Bankr. P. 9022 (directing that a motion for an order of contempt is a "contested matter" governed by Fed. R. Bankr. P. 9014).

Electronic copy available at: https://ssrn.com/abstract=2925494

- Is there a private right of action for violations of the discharge injunction?[6]

In the lower courts, Credit One also would be able to assert the typical procedural and substantive defenses against the plaintiff's allegations.

None of these issues are before this court. In his complaint, Anderson seeks relief for violations of section 524(a)(2) and contempt. Amended Class Action Adversary Complaint ¶ 80 (JA 398). Credit One presents its issue to this court as "Whether the Federal Arbitration Act, 9 U.S.C. § 1 et seq., requires the enforcement of the parties' written arbitration agreement with respect to Anderson's claim for violation of 11 U.S.C. § 524." Appellant's Brief p. 1. In their

---

[6] A demand for arbitration of an implied private right of action for violation of the discharge and the discharge injunction would raise different issues than the ones discussed in this brief. An implied private right of action does not ask for enforcement of the existing injunction but requests new relief. Indeed, it is likely a debtor could bring an implied private right of action directly in any federal district court pursuant to general federal-question jurisdiction under 28 U.S.C. § 1331. Of the four appellate courts to consider the issue, three have held there is no implied private right of action to enforce the discharge injunction. *Compare Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002); *Cox v. Zale Delaware, Inc.*, 239 F.3d 910 (7th Cir. 2001); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir. 2000) *with Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2009). *See also Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958 (11th Cir. 2012) (holding no cause of action existed to allow enforcement of another court's bankruptcy discharge).

It does not appear that in the appeal the parties are treating Anderson's claim as an implied private right of action to enforce the discharge injunction.

22

Electronic copy available at: https://ssrn.com/abstract=2925494

professional judgment, Amici believe the answer to this question is clearly "no."

The opinion below should be affirmed.

Respectfully submitted,

 /s/ Tara A. Twomey
TARA A. TWOMEY
NATIONAL CONSUMER BANKRUPTCY
RIGHTS CENTER
1501 The Alameda, Suite 200
San Jose, CA 95126
tara.twomey@comast.net
(831) 229-0256


Date: February 27, 2017

23

Electronic copy available at: https://ssrn.com/abstract=2925494

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 5,345 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font. As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


 /s/Tara A. Twomey

TARA A. TWOMEY

24

Electronic copy available at: https://ssrn.com/abstract=2925494

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2017, I electronically filed the foregoing document, along with ten paper copies, with the Clerk of the Court for the Second Circuit Court of Appeals by using the CM/ECF system and First-Class Mail.

I further certify that parties of record to this appeal who either are registered CM/ECF users, or who have registered for electronic notice, or who have consented in writing to electronic service, will be served through the CM/ECF system.


/s/ Tara A. Twomey

TARA A. TWOMEY

25

Electronic copy available at: https://ssrn.com/abstract=2925494